**In the Matter of Thomas Maynard REID and Grace Swim Reid, Bankrupts.**

Nos. 2233, 2628.

United States District Court
W. D. Virginia,
Roanoke Division.

Sept. 30, 1961.

———◆———

Stuart A. Barbour, Jr., Roanoke, Va., for bankrupts.

Frank M. McCann, Asst. U. S. Atty., Roanoke, Va., for the United States.

J. Glenwood Strickler, Roanoke, Va., for Wm. W. Ward, t/a Biltmore Realty Co.

**690**

MICHIE, District Judge.

Thomas Maynard Reid filed his petition in bankruptcy on March 7, 1960. In the petition he listed in Schedule B-1, Real Estate:

"Lot 3, Block 1, Map of Fairhope, 1522 Fairhope Road, held by petitioner and wife as tenants by the entirety with right of survivorship not an asset herein."

And no value was estimated in the column "Estimated value of debtor's interest" opposite the foregoing statement. The petitioner was duly adjudicated a bankrupt, a trustee was appointed, the assets other than the tenancy by the entirety were fully administered and the bankrupt was discharged on May 3, 1960 and the estate closed on August 16, 1960.

Among the unsecured claims, none of which were paid in full, were that of the United States of America, assignee of a note in the original sum of $1,044.92 on a Federal Housing Loan made by the Colonial National Bank of Roanoke, Virginia, to the bankrupt and his wife, Grace Swim Reid, and that of William W. Ward, t/a Biltmore Realty Co., for $712.75 being the balance due on an unsecured obligation taken as part of the purchase price when Ward sold to the bankrupt and his wife the property held by the tenancy by the entirety above-mentioned. These obligations are represented by notes signed by both Mr. and Mrs. Reid and they arose out of the purchase and improvement of the property above mentioned held by the bankrupts in a tenancy by the entirety.

Grace Swim Reid, the wife of Thomas Maynard Reid, filed her petition in bankruptcy in the same court on October 18, 1960, slightly more than two months after her husband's estate was closed in bankruptcy and about five and one-half months after he was discharged. She stated in Schedule B-1 the following:

"Only interest in real property is that as tenant by the entireties, with right of survivorship with husband in residential property, Lot 3, Blk. 1, Map of Fairhope, which does not

accrue as asset of petitioner's bankrupt estate."

And on Schedule A-3, Unsecured Creditors, Mrs. Reid listed the debt to Ward in the sum of $661 and the debt to the United States in the sum of $888.20.

Shortly thereafter William W. Ward moved the referee for a reopening of the Thomas Maynard Reid bankruptcy, its consolidation with Mrs. Reid's bankruptcy and a sale of the property held in the tenancy by the entirety. The referee declined to reopen the case on the ground that the petition should be addressed to the District Judge and also on the ground that the property held by the entirety could not be sold by the trustee in any event.

Thereupon Ward filed a petition for review with the District Judge and the United States filed a similar petition on January 3, 1961. The Court on that day entered an order reopening the Thomas Maynard Reid bankruptcy case and consolidating it with the Grace Swim Reid case and referred the matter back to the referee in bankruptcy for such further action as might be appropriate.

Counsel for Mr. Reid then filed a motion to vacate the order reopening the estate. Briefs were filed, argument was had and the motion to vacate was overruled on June 8, 1961 and the case referred back to the bankruptcy court for appropriate disposition. On June 22, 1961 the referee, after further hearing, entered an order to the effect that, the closed case having been reopened and the two cases consolidated, the property held in the tenancy by the entirety could and should be sold by the trustee. The attorney for the bankrupts thereupon filed with the Court a petition for review of the order of the referee. Briefs were filed and argument again heard and the Court now confirms the order of the referee.

■■ In Virginia the common law incidents of an estate by the entirety have not been altered by statute. In legal theory both husband and wife each own the entire property and no interest in

the property may be reached by a creditor of either though the property may be reached when subjected to a joint or joint and several debt. Vasilion v. Vasilion, 192 Va. 735, 66 S.E.2d 599. In consequence of these rules, if one spouse goes into bankruptcy no part of the property held in the tenancy by the entirety passes to the bankruptcy trustee and the bankrupt comes out of bankruptcy with his interest in the property unaffected. Hence the referee was clearly right initially in not subjecting Mr. Reid's interest in the property to the bankruptcy proceeding inasmuch as Mrs. Reid did not go into bankruptcy until after Mr. Reid was discharged and his estate was closed. There is no controversy as to this.

However, it has been held in several jurisdictions and in particular by the Court of Appeals for this Circuit that when both husband and wife are in bankruptcy at the same time the two cases may be consolidated and a joint trustee appointed and that the trustee may then proceed to sell the property held by the entirety for the benefit of joint creditors —though not if there are no joint creditors. Roberts v. Henry V. Dick & Co., 4 Cir., 275 F.2d 943.

In the case last cited, separate petitions in bankruptcy were filed by a husband and his wife on the same day. The Court, after referring to several district court cases holding that, in the case of the concurrent bankruptcy of husband and wife, the proceedings could be consolidated and property held by the entirety subjected to the claims of joint creditors, said at page 945 of 275 F.2d:

"Our view of the law is the same as that taken by the District Courts cited, and by the District Court in the present case. It would be unreasonable to attach the significance contended for by the appellants to the fact that the husband and wife filed separate petitions, since the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., does not provide ordinarily for joint petitions or discharges of husband and wife. The effect of our up-holding appellants' contention would be to put beyond the reach of creditors holding joint obligations of a husband and wife all property held by them as tenants by the entirety."

There being some doubt on the record in that case as to whether or not there were joint creditors, the Court remanded the case for further inquiry by the District Court saying:

" * * * If it is found that the debts in question are joint, or both joint and several, obligations of the husband and wife, the order should be reinstated; if it is found otherwise, then it would follow that the property in controversy was not subject to the creditors' claims, and its transfer constituted no basis for denial of the discharge."

There can be no doubt therefore that, in this Circuit at least, if the wife's petition had been filed before the husband's estate was closed, the two cases should have been consolidated and the property in question sold for the benefit of the joint creditors. And we understand that this is conceded by the attorney for the bankrupts.

The question then turns solely on whether or not Mr. Reid's case was properly reopened after having been closed.

The statute, § 2, sub. a(8) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(8), so far as relevant, provides:

"(a) The courts * * * of bankruptcy * * * are invested * * * with such jurisdiction at law and in equity as will enable them to * * * (8) Close estates * *; and reopen estates for cause shown."

Prior to the passage of the Chandler Act in 1938 the power to reopen estates was limited to cases when "it appears they were closed before being fully administered". It has generally been considered that the removal of the foregoing limitation by the Chandler Act and the substitution of the phrase "for cause shown" was intended to broaden the pow-

er of the bankruptcy court to reopen cases that have been closed.

A decision in this case therefore depends upon the meaning of the phrase "for cause shown" as used in § 2, sub. a (8) of the Bankruptcy Act.

It is the contention of the attorney for Mr. Reid that no "cause" has been "shown" except that the joint creditors can now collect their claims by the sale of an asset that could not have been reached when Mr. Reid's estate was closed and that that fact does not constitute "cause" within the meaning of the statute.

No authority directly in point has been found by counsel or the Court. But the Court is of the opinion that the fact that an asset of the bankrupt can now be reached which could not be reached before is a sound "cause" for reopening the estate.

As indicated, the law previously limited reopening to cases where assets had not been fully administered. These actually were usually cases in which assets had either been concealed or simply overlooked, in some cases, perhaps, because they were deemed too inconsequential to bother about. An asset which could not be reached because of the legal situation then existing and can now be reached certainly has some points of similarity to an asset which was concealed and perhaps even more to an asset which was overlooked because it was erroneously thought to be of insignificant value.

Certainly it would seem that a debtor who goes into bankruptcy to cleanse himself of his debts by surrendering all of his property can hardly be heard to say that he and his wife should be allowed to cleanse themselves separately of their debts, including joint debts, and yet keep their joint property as against joint creditors merely because one of them chose not to go into bankruptcy until the other had been discharged and his estate closed.

It has not been suggested that the Reids deliberately embarked upon a course under which each would in turn be discharged of their individual and joint debts and yet come out of bankruptcy retaining their joint property secure from attack from their joint creditors. Yet the possibility for this sort of "legal fraud" is obvious if the bankruptcy case of the first spouse to be discharged cannot be reopened when the second spouse files in bankruptcy.

Of course alert and unusually well-informed counsel could avert such a deliberate fraud by following the course adopted by counsel in the case of Phillips v. Krakower, 4 Cir., 46 F.2d 764. In fact the attorney for the bankrupts here contends that the joint creditors have been guilty of laches in not following that course and that Mr. Reid's case should not have been reopened because of such laches.

In the Krakower case a joint creditor of a bankrupt whose wife had not filed in bankruptcy asked the District Court to defer the discharge of the bankrupt until the creditor could get a joint judgment in the state court against the bankrupt and his wife and thus subject to his debt a tenancy by the entirety held by the husband and wife. The District Court granted the delay and, on appeal, the Court of Appeals for this Circuit affirmed, saying at pages 765, 766 of 46 F.2d:

"The note held by Mrs. Krakower, therefore, is one upon which she is entitled to judgment which she can enforce against the property held by entireties. The discharge of Phillips in bankruptcy not only will prevent judgment being obtained against him on the note, but will prevent also, during his lifetime, the property held by entireties being subjected to the satisfaction of any judgment which may be obtained against his wife. And so, although the bankruptcy proceeding has brought no interest in the estate by entireties into court for the benefit of the creditors of Phillips, his discharge in bankruptcy will remove that entire property beyond the reach of creditors entitled to subject it to their

claims. The question presented is whether, without giving these creditors an opportunity to proceed, the court should grant the discharge knowing that it will result in a legal fraud, i. e. the effectual withdrawing of the property from the reach of those entitled to subject it to their claims, for the beneficial ownership and possession of those who created the claims against it. We cannot conceive that any court would lend its aid to the accomplishment of a result so shocking to the conscience.

"The purpose of the bankruptcy act was to equitably distribute the assets of distressed debtors among their creditors and to discharge them from further liability after this had been done. It was never contemplated that it should be used to perpetrate fraud or to shield assets from creditors. It is elementary that a bankrupt is not entitled to a discharge unless and until he has honestly surrendered his assets for the benefit of creditors; and he certainly is not in position to ask a court of bankruptcy, which is a court of equity, to grant him a discharge under the statute, when the effect of the discharge will be to withdraw from the reach of creditors property properly applicable to the satisfaction of their claims. Appellant complains of the delay which will result in the granting of his discharge, if same is postponed until the property held by the entireties can be subjected to the claims of those entitled to proceed against .it, and says that a right granted by statute should not be thus denied him. But the doing of justice is of more importance than haste."

In the case at bar, Mr. Reid's discharge having been already given when Mrs. Reid filed in bankruptcy, the failure to reopen the husband's case would result in precisely the same type of "legal fraud" which the Court decried in the Krakower case.

It has always been held that whether or not an estate should be reopened under the authority granted by § 2, sub. a(8) of the Bankruptcy Act rests largely in the discretion of the Court. And as stated in 6 Remington on Bankruptcy at p. 606:

"Since 1938 amendment of § 2(8), merely authorizing the court to reopen an estate for 'cause shown,' existence of discretion in the court would seem to be even more obvious."

The courts have been rather liberal in permitting reopening and there is no fixed time limit. And the Court cannot agree with the contention of counsel for the bankrupts to the effect that reopening should be denied because the joint creditors failed to follow the Krakower route and therefore have been guilty of laches.

In 6 Remington on Bankruptcy it is said:

"However, the application must be within a reasonable time or it will be denied for laches.

\* \* \* \* \*

"As to what will constitute such laches as to warrant or require denial of a petition to reopen, each case must rest on its own facts. It is sufficient cause to deny a creditor's petition to reopen that he permitted over three and one-half years to pass before challenging the particular claim the allowance of which he seeks to expunge. It may be said, generally, that the longer the delay in making the application, the stronger and more positive the showing required to induce the court to grant it, and that, after a lapse of as much as seven years after closing the estate and discharging the bankrupt, vague allegations will not suffice; although a lapse of ten years does not preclude relief if the referee had never even called a meeting of creditors in the original bankruptcy. \* \* But if the delay has been detrimental to an objecting creditor, that is a factor for consideration."

The attorney for the bankrupts does not contend that the joint creditors were guilty of laches in delaying *the motion to reopen the estate of Mr. Reid*. That motion was, in fact, made quite promptly after Mrs. Reid filed her petition in bankruptcy. The laches is said to have occurred before the discharge of Mr. Reid and the closing of his estate and before Mrs. Reid filed in bankruptcy and to consist of the failure of either of the joint creditors to follow the Krakower procedure. Again the time element involved is only a matter of a few months but, of course, after Mr. Reid's discharge it was too late to follow the Krakower course.

■ Ordinarily, except when in equity laches is used in lieu of a statute of limitation, laches will not bar an action unless the party seeking to use it as a bar has in some way been hurt by such laches.

As said in 30 C.J.S. Equity § 112 at pp. 520, 521:

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay; such delay in enforcing one's rights as works disadvantage to another; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; acquiescence in the assertion of adverse rights and undue delay on complainant's part in asserting his own, to the prejudice of the adverse party."

The foregoing is perhaps more a description or characterization of laches than a precise definition. But throughout it will be seen that the doctrine comes into play only when the other party has been in some way injured by the conduct held to constitute laches.

But in this case it is hard to see how Mr. Reid would have been any better off if the joint creditors had followed the procedure adopted in the Krakower case. In either event the joint property of Mr. and Mrs. Reid would have been sold for the payment of their joint debts. It is suggested that, when the property is sold in this case, there may be a surplus over and above what is required for payment of the joint debts and there was some discussion in the argument of the case as to whether or not the status of the tenancy by the entirety would attach to any surplus cash or deferred purchase money obligations so created. This question need not be decided at this time but in case it should hereafter arise, attention of counsel is called to the elaborate note in 64 A.L.R.2d, p. 8.

At any rate it seems clear that if such cash and deferred purchase money do take the status of a tenancy by the entirety, the bankrupts in this case will, after sale of the property, be in precisely the same position they would have been in if a joint judgment had been obtained in a state court under the Krakower procedure. Any excess over and above the amount needed to satisfy the joint debts would belong to the bankrupts by the entirety and could not be reached by the creditors who have claims against only one of the bankrupts.

And on the other hand, if the converse be the law in Virginia, so that the excess would be divided between the parties and become the individual property of each and thus subject to the claims of individual creditors, the Reids would still have been no better off if the joint creditors had followed the Krakower procedure than they will be if the procedure elected in this case is followed. For it would surely follow from the logic of the Krakower case that the discharge in

bankruptcy under such a procedure would be held up until the property had been sold to satisfy the judgment obtained in the state court and thus any excess that might have become the individual property of the bankrupt, being the proceeds of property owned when the bankruptcy commenced, would become assets in bankruptcy so that in this alternative also the bankrupts would have gained nothing if the creditors had followed the Krakower procedure.

Furthermore the concept of negligence, inexcusable delay, knowledge of conditions and acquiescence, etc., runs all through the concept of laches. I do not believe that anything in line with any of these concepts can be charged against the joint creditors here. Certainly it cannot be charged against the creditors themselves. At most the accusation must be that the attorneys for the creditors knew or should have known of the Krakower case and neglected to proceed accordingly. The statute law of Virginia in effect requires its courts to take judicial notice of all of the decisions of all of the courts everywhere. Va.Code, § 8–273. But fortunately the law does not assume that every attorney knows all of the law and it certainly would not be surprising if the attorneys who represent the joint creditors in this case had never heard of the Krakower case until it was quite recently called to their attention. It is apparently the only case in point. And I do not think they could be held to be negligent because they did not know of that case or because they did not think of the possibility that there might be such a case and look for it. The attorneys who represented the creditors in the Krakower case are to be complimented on their ingenuity. But others are not to be stigmatized as negligent because they did not have the same happy idea.

It follows therefore that I cannot find the joint creditors guilty of laches in this case both because no harm will result to the bankrupts from the slight delay involved and because I cannot find any culpable negligence in the conduct of the creditors or their attorneys.

The order of the referee of June 22, 1961 must therefore be affirmed and the matter remanded to the referee for further proceedings in accordance with said order.

An order will be entered accordingly.