In the Matter of CAROUSEL INTERNA-
TIONAL CORPORATION, Debtor.

Appeal of LINCOLN OFFICE SUPPLY
COMPANY, INCORPORATED.

No. 96–1098.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1996.

Decided July 10, 1996.

Timothy J. Cassidy (argued), Cassidy & Mueller, Peoria, IL, for Lincoln Office Supply Company, Incorporated.

Kurt B. Bickes, Decatur, IL, for Drywall Associates.

Jeffrey C. Taylor, Robbins, Schwartz, Nicholas, Lifton & Taylor, Decatur, IL, Pro Se.

Paul R. Cole, Champaign, IL, Pro Se.

David Stevens, Heller, Holmes & Associates, Mattoon, IL, Rodney Louis Smith, Charleston, IL, for Quantum Chemical Corporation.

David H. Hoff (argued), Office of the United States Attorney, Urbana Division, Urbana, IL, for Internal Revenue Service.

Marilyn J. Smith, Champaign, IL, Pro Se.

Ronald N. Smith, Champaign, IL, Pro Se.

Robert L. Smith, Champaign, IL, Pro Se.

Before POSNER, Chief Judge, and ESCHBACH and EVANS, Circuit Judges.

ESCHBACH, Circuit Judge.

Lincoln Office Supply, Inc., (hereinafter "Lincoln") sought to set aside as void liens filed by the creditors of Carousel International Corporation's shareholders. When the liens in question were filed, they were filed against $250,000 held in escrow by Carousel International Corporation's bankruptcy trustee, pending a final determination as to whether the funds were the property of Carousel's shareholders or property of the bankruptcy estate. Lincoln argued that because the bankruptcy estate had a claim to the money, the entire $250,000 was part of the bankruptcy estate pending final resolution of the dispute. Therefore, according to Lincoln, 11 U.S.C. § 362 prevented the shareholders' creditors from filing liens against the money. The bankruptcy court found that $240,000 of the money was never part of the bankruptcy estate. Accordingly, the bankruptcy court upheld the liens against $240,-000 of the $250,000 in dispute, and ruled that

11 U.S.C. § 362 is inapplicable. The district court affirmed. So do we.

I.

On June 24, 1992, Carousel International Corporation and Bryan Leasing, a related company, filed for Chapter 11 bankruptcy protection. As part of the debtors' bankruptcy reorganization plan, an agreement was negotiated with Atlantis Group, Inc., (hereinafter "Atlantis") to buy the debtors' assets. Atlantis refused to purchase the assets, however, absent a non-competition agreement between Atlantis and the debtors' shareholders. Atlantis negotiated a deal with the shareholders, agreeing to pay them $250,000 in consideration for their signing a non-competition agreement. Lincoln objected to the confirmation of the debtors' reorganization plan, arguing that the $250,000 should be paid to the debtors' creditors rather than to the shareholders. Atlantis refused to pay either the bankruptcy estate or the debtors' creditors, arguing that to do so would leave the shareholders' non-competition agreement unsupported by consideration. The buy-out of the debtors' assets by Atlantis was thus placed in jeopardy.

To resolve the dispute and facilitate the sale of the debtors' assets, the shareholders agreed to permit the bankruptcy trustee to hold the $250,000 in escrow on their behalf pending a final determination of whether the $250,000 should be included in the bankruptcy estate. In the light of the shareholders' stipulation to permit the trustee to hold the funds, the bankruptcy court issued an order on March 4, 1993, approving the sale of assets to Atlantis and permitting the bankruptcy trustee to hold the $250,000 "pending further determination of disposition of said sum after motion by any interested party." Shortly after receiving the $250,000, the trustee was served with non-wage garnishments by Drywall Associates, Inc., Quantum Chemical Corporation, and Lincoln, and tax levies by the Internal Revenue Service (collectively "the liens"). The liens were to satisfy debts owed to the lienholders by the shareholders.

The bankruptcy trustee ultimately settled the dispute with the shareholders regarding

the disposition of the $250,000, agreeing that only $10,000 of the $250,000 should be retained as property of the bankruptcy estate. Subsequently, the bankruptcy court issued an order approving the settlement and authorizing distribution of the escrowed funds to the shareholders subject to the satisfaction of all liens. Uncertain as to how to distribute the funds, the trustee filed an interpleader action against the shareholders and the lienholders asking the bankruptcy court to determine the priorities of the various claims to the escrowed funds.

Drywall Associates, Inc., (hereinafter "Drywall") filed a motion for summary judgment alleging that the various liens were void because at the time that they were filed the escrowed funds were the property of the bankruptcy estate and could not be attached pursuant to 11 U.S.C. § 362, the bankruptcy code's automatic stay provision. Lincoln, in response to Drywall's motion, adopted the same position taken by Drywall. The United States, on behalf of the IRS, argued in response to Drywall's motion that in fact the $250,000 was not part of the bankruptcy estate because it was consideration paid to the debtors' shareholders, not to the debtors. Therefore, the IRS lien did not violate 11 U.S.C. § 362.

On November 16, 1994, the bankruptcy court ruled as a matter of law that the $250,000 was not part of the debtors' bankruptcy estate and therefore was not subject to the automatic stay provision at the time the liens were filed with the trustee. Lincoln appealed to the district court. The district court affirmed. Lincoln now brings this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d).

## II.

■ Lincoln unsuccessfully argued before the bankruptcy court that because there was a "genuine dispute" at the time that the liens were filed regarding whether the funds were part of the bankruptcy estate, all of the funds were necessarily property of the bankruptcy estate as a matter of law. On appeal, the district court rejected Lincoln's argument. Reviewing the decision of the district court *de novo*, we agree with the district court.

To clarify the appropriate standard of review, we will begin our analysis by delineating what Lincoln does not argue. Lincoln does not challenge the bankruptcy court's approval of the settlement between the bankruptcy trustee and the shareholders in which the bankruptcy estate retained only $10,000 of the $250,000 in dispute. On the contrary, Lincoln maintains that:

> Lincoln Office does not question the propriety of the bankruptcy court orders authorizing distribution of $240,000 of the $250,000 to the Smiths [the shareholders]. These orders ... constitute judicial resolution of the dispute of whether the $250,000 should be administered for the benefit of the Debtor's creditors or paid to the Smiths. The propriety of the bankruptcy court's resolution of this dispute is not at issue. Whether the $250,000 was "property of the estate" *pending* resolution of this dispute is at issue.

Lincoln argues that because the bankruptcy estate had a claim to part of the $250,000, the entire $250,000 was property of the bankruptcy estate as that term is defined in 11 U.S.C. § 541(a) pending final resolution of the estate's claim. Lincoln does not challenge the bankruptcy court's factual finding regarding the disposition of the money. Lincoln challenges the court's ruling regarding the legal status of the money while the money was in escrow under the supervision of the bankruptcy trustee. Therefore, Lincoln raises a question of law, which we review *de novo*.

Lincoln's motive for proffering its argument is simple. If Lincoln is correct, then 11 U.S.C. § 362(a)(4) barred the shareholders' creditors from filing liens against the money until the money was conclusively excluded from the estate. The liens filed in this case by Drywall, Lincoln, Quantum Chemical Corporation, and most important by the IRS would be void and unenforceable. Lincoln, in turn, might be entitled to a windfall in that its claim would be given a greater priority, and it arguably would receive a greater portion of the $240,000 distributed to the shareholders.

Title 11 U.S.C. § 541 defines "property of the estate" broadly, to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Indeed, we have held that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Matter of Yonikus (Yonikus II)*, 996 F.2d 866, 869 (7th Cir.1993). However, the scope of "property" under § 541 is necessarily limited to the property owned by the debtor at the commencement of the bankruptcy. *Matter of Wayco, Inc.*, 947 F.2d 1330, 1333 (7th Cir.1991). A debtor's interest in a portion of property does not subject the entire property to § 541. Nor does a debtor's claim to property mean that the entire property is part of the bankruptcy estate.

Put simply, the bankruptcy estate does not own property solely because the estate has a claim of ownership. When the estate stakes a claim, the property of the estate is just that: a claim of ownership. The estate's property does not include the thing to which it lays claim until the matter is adjudicated or resolved by the parties. To hold otherwise would necessarily lump into the bankruptcy estate assets owned by others, but only claimed by the debtor. For example, in *Matter of Yonikus (Yonikus I)*, 974 F.2d 901 (7th Cir.1992), we held that where the debtor had an unresolved personal injury claim at the time that he filed bankruptcy, the "potential personal injury claim was property of the bankruptcy estate." *Id.* at 905. However, the estate's property included only the potential claim, not the amount of damages sought from the defendant. The damages sought from the defendant remained the defendant's property, unless and until a court ruled to the contrary.

In addressing Lincoln's argument, the bankruptcy court said "the Court has found no authority which would remotely suggest that the $250,000 paid for the non-competition agreements of the individual shareholders was the property of the Debtor corporation's bankruptcy estate." We agree. No creditor sought to have the $250,000 declared part of the bankruptcy estate while the funds were in escrow. Neither Lincoln, nor any other creditor, challenges the determination that $240,000 of the $250,000 belongs to the shareholders. In the light of these facts, there is no basis for the proposition that the entire $250,000 was property of the bankruptcy estate at the time that the liens were filed.

### Conclusion.

For all of the foregoing reasons, the decision of the district court is AFFIRMED.