**In re Douglas C. PLUMLEE, Debtor/Appellant.**

**R. Clinton Stackhouse, Jr., Trustee, Plaintiff/Appellee,**

v.

**Douglas Plumlee, Foremost Marine Enterprises, Inc., Helen S. Plumlee, D. Todd Plumlee, and Alisa G. Plumlee, Defendants.**

No. 2:99CV503.

United States District Court, E.D. Virginia, Norfolk Division.

July 29, 1999.

Robert V. Roussos, Roussos, Langhorne and Carlson, P.L.C., Norfolk, VA, for appellant.

Ann B. Brogan, Marcus, Santoro, Kozak & Melvin, P.C., Portsmouth, VA, for appellee.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the court on Debtor Douglas C. Plumlee's appeal, pursuant to 28 U.S.C. § 158(a), from two orders of the United States Bankruptcy Court for the Eastern District of Virginia. On February 18, 1998, the bankruptcy court reopened Plumlee's case, which was closed on September 15, 1992, to determine whether proceeds that he received from the settlement of a lawsuit are property of the bankruptcy estate. On March 3, 1999, the court ruled that the settlement proceeds are property of the estate. For the reasons stated below, the bankruptcy court's orders are **AFFIRMED.**

### I. Factual and Procedural History

The facts in this case are not in dispute. Plumlee filed his original bankruptcy petition under Chapter Seven of the Bankruptcy Code on December 27, 1991. Prior to filing his petition, he was president of Commercial Building Services, Inc. ("CBS"). However, in July, 1991, he and Richard Cheng, President of Eastern Computers, Inc. ("ECI"), agreed that ECI and CBS would merge. As part of the agreement, ECI would employ Plumlee as vice-president of manufacturing, and assume CBS's debts. Plumlee had pledged personal assets to guarantee some of CBS's debts, the largest of which was a $700,000 loan from Crestar Bank. Plumlee began working for ECI in July, 1991, but by the end of 1991, the merger had not occurred, and one of CBS's creditors initiated foreclosure proceedings. Plumlee filed his bankruptcy petition to protect his personal assets. On January 23, 1992, Cheng fired Plumlee, and on January 29, 1992, he told Plumlee that ECI was abandoning the merger with CBS.

Alexander P. Smith was appointed trustee of Plumlee's bankruptcy estate. On August 18, 1992, the bankruptcy court discharged Plumlee, and on September 15, 1992, it closed his case. On August 2, 1993, Plumlee filed a motion for judgment in the Circuit Court for the City of Norfolk against ECI and Cheng. Plumlee's complaint alleged breach of the merger agreement, breach of Plumlee's employment contract, and fraud. During the course of the litigation, Plumlee's attorney contacted Mr. Smith and asked whether he believed the bankruptcy estate had any interest in Plumlee's cause of action against ECI and Cheng. In a letter dated September 26, 1996, Smith stated that, based on his understanding that Plumlee's claim was for breach of the merger agreement and for breach of Plumlee's employment contract, the estate had no interest in the claim. In April, 1997, Plumlee's suit proceeded to trial, and on May 5, 1997, the jury returned a verdict for Plumlee, but only on his fraud claim. The jury found no breach of contract as to either the merger agreement or Plumlee's employment contract. The jury awarded Plumlee $500,000 in compensatory damages, but on June 12, 1997, the parties reached a post-judgment settlement agreement under which Cheng and ECI agreed to pay CBS and Plumlee $225,000 each.

On October 21, 1997, Crestar Bank filed with the bankruptcy court a motion to reopen Plumlee's case. After a February

9, 1998, hearing, the court granted Crestar's motion on February 18, 1998. R. Clinton Stackhouse, Jr. was appointed the new trustee of Plumlee's bankruptcy estate. On September 15, 1998, Stackhouse filed a complaint on behalf of the estate seeking to recover Plumlee's settlement proceeds. Count I of the complaint sought an order declaring that the proceeds were property of the estate and requiring Plumlee to turn $225,000 over to Stackhouse.[1] On December 22, 1998, Plumlee filed a motion to dismiss the complaint or, in the alternative, a motion for summary judgment. On January 12, 1999, Stackhouse filed a motion for summary judgment on Count I of the complaint. The bankruptcy court held a hearing on the parties' motions on January 28, 1999, and by order dated March 3, 1999, it denied Plumlee's motions and granted Stackhouse's motion.

On March 12, 1999, Plumlee filed a notice of appeal of the bankruptcy court's March 3, 1999, summary judgment order. He filed a brief in support of his appeal on April 27, 1999. On May 18, 1999, Stackhouse filed an opposing brief, and on May 27, 1999, Plumlee filed a reply brief. Accordingly, this matter is ripe for decision.

## II. Standard of Review

On appeal, a district court reviews a bankruptcy court's findings of fact under the clearly erroneous standard, while a bankruptcy court's conclusions of law are reviewed *de novo*. *In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992). Since summary judgment constitutes judgment as a matter of law, this court reviews the bankruptcy court's summary judgment order *de novo*. Pursuant to Bankruptcy Rule 7056, Rule 56 of the Federal Rules of Civil Procedure applies to adversarial bankruptcy proceedings. Thus, as with summary judgment in a district court proceeding, summary judgment in a bankruptcy proceeding is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus.*, 763 F.2d 604, 610 (4th Cir.1985). However, the bankruptcy court's decision to reopen Plumlee's case is committed to the court's sound discretion, so this court reviews that decision under an abuse of discretion standard. *In re Thompson*, 16 F.3d 576, 581 (4th Cir.1994).

## III. Discussion

### A. Did the Bankruptcy Court Abuse Its Discretion By Reopening Plumlee's Case?

As a preliminary matter, Stackhouse argues that Plumlee is barred from appealing the bankruptcy court's order to reopen his case because he failed to appeal within ten days of the order, as required by Bankruptcy Rule 8002(a). In response, Plumlee asserts that the order reopening his case was not a final judgment, order or decree, *see* 28 U.S.C. § 158(a)(1), so it was not appealable at the time that the bankruptcy court issued it. Stackhouse maintains that the order was a final order, so Plumlee's appeal is untimely. He cites a Seventh Circuit decision for the proposition that an order to reopen a debtor's estate is "judicial, final and binding upon all the parties." *In re Joslyn's Estate*, 171 F.2d 159, 164 (7th Cir.1948). However, the Seventh Circuit stated this proposition in the context of a discussion as to whether one bankruptcy court could review another's decision to reopen an estate, not in the context of an appeal. Contrary to Stackhouse's assertions, courts do not regard an order reopening a debtor's estate as a final

---

1. Counts II through VI of the complaint sought to recover various sums of money transferred to third parties after Plumlee filed his bankruptcy petition and are not the subject of this appeal.

determination adverse to any party. *See, e.g., Gerber v. Fruchter,* 147 F.2d 120, 122 (2d Cir.1945); *Doyle v. Ponsford,* 136 F.2d 401, 403 (8th Cir.1943); *In re Snyder,* 4 F.2d 627, 628 (9th Cir.1925). In fact, some courts have indicated that no party would have standing to challenge such an order at the time it is issued because the party would not yet have suffered an injury. *See, e.g., Gerber,* 147 F.2d at 122; *Williams v. Rice,* 30 F.2d 814, 815 (5th Cir.1929); *In re Leigh,* 272 F. 678, 679 (7th Cir.1921). One option a party may follow if it wishes an immediate appeal of an order reopening an estate is to file a motion to vacate the order, and then appeal the ruling denying its motion. *See, e.g., In re Fair Creamery Co.,* 193 F.2d 5, 6 (6th Cir.1952); *Duggan v. Franklin Square Nat'l Bank,* 170 F.2d 922, 923 (2d Cir. 1948); *Doyle,* 136 F.2d at 403; *Hunter v. Commerce Trust Co.,* 55 F.2d 1, 2 (8th Cir.1932). In this case, Plumlee did not file a motion to vacate, but that does not then convert the bankruptcy court's order to reopen his estate into a final order. Since the order to reopen is not a final one, Plumlee is not barred from appealing at this time, as he has now suffered an injury as a result of the reopening of his case.

■ Turning to the substance of Plumlee's appeal, he argues that the bankruptcy court abused its discretion by reopening his estate. On motion of "the debtor or other party in interest," Bankruptcy Rule 5010, a bankruptcy court may reopen any closed case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). As indicated above, the decision to reopen a case is within the bankruptcy court's discretion. *See, e.g., In re Thompson,* 16 F.3d at 581. Courts "have been rather liberal in permitting reopening." *In re Reid,* 198 F.Supp. 689, 693 (W.D.Va.1961), *aff'd sub nom. Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir. 1962) (stating that "no attempt is made to lay down rigorous outer limits" on a bank-

ruptcy court's discretion to reopen a closed case).

■ Many courts have held that a bankruptcy court does not abuse its discretion when it reopens a closed case to administer newly-discovered assets. *See, e.g., In re Mullendore,* 741 F.2d 306, 308 (10th Cir.1984); *In re Berg,* 45 B.R. 899, 902–03 (9th Cir. BAP 1984); *Scharmer v. Carrollton Mfg. Co.,* 525 F.2d 95, 98 (6th Cir. 1975); *Doyle,* 136 F.2d at 403; *In re Joslyn's Estate,* 171 F.2d at 164; *Williams,* 30 F.2d at 815. In fact, some courts have stated that "it is the duty of the court to reopen an estate whenever prima facie proof is made that it has not been fully administered." *In re Mullendore,* 741 F.2d at 308; *accord Doyle,* 136 F.2d at 403; *In re Joslyn's Estate,* 171 F.2d at 164. In this case, the undisputed evidence at the time of Crestar's motion to reopen Plumlee's estate showed that Plumlee had just received a sizeable settlement payment in a suit related to events predating Plumlee's original bankruptcy petition. Clearly, the bankruptcy court had discretion to reopen Plumlee's estate to determine whether the court needed to administer the settlement proceeds as an asset of the estate.

■ Plumlee contends that given the length of time between the closing of his estate and Crestar's motion, it was unreasonable for the bankruptcy court to reopen his estate. "[T]here is no fixed time limit" on a bankruptcy court's ability to reopen a closed case. *In re Reid,* 198 F.Supp. at 693; *see also In re Case,* 937 F.2d 1014, 1018 (5th Cir.1991); *Grand Union Equipment Co. v. Lippner,* 167 F.2d 958, 961 (2d Cir. 1948); *Traub v. Marshall Field & Co.,* 182 F. 622, 624–25 (5th Cir.1910). However, when deciding whether to reopen an estate, the length of time between the estate's closing and the motion to reopen it should be "of crucial significance" to the bankruptcy court. *Reid,* 304 F.2d at 355. "[A]s the time between closing of the estate and its reopening increases, so must also the cause for reopening increase in

weight." *Id.* While it is true that Crestar filed its motion five years after the bankruptcy court closed Plumlee's estate, it did so only four months after Plumlee received his settlement payment from ECI and Cheng. Plumlee argues that Crestar knew of his suit against ECI and Cheng well before the June 12, 1997, settlement agreement; however, until Plumlee actually received the payment, the existence of unadministered bankruptcy assets was speculative, so any motion to reopen his estate would have been premature.[2] Accordingly, the bankruptcy court did not abuse its discretion by granting Crestar's motion to reopen Plumlee's bankruptcy estate.

*B. Did the Bankruptcy Court Err by Granting Summary Judgment in Favor of Stackhouse?*

The parties do not dispute the facts underlying the bankruptcy court's March 3, 1999, summary judgment ruling, so the only question for this court on appeal is whether the bankruptcy court's ruling was correct as a matter of law. As stated above, a bankruptcy court's conclusions of law are reviewed *de novo*. *In re Johnson,* 960 F.2d at 399. Plumlee argues that, contrary to the court's ruling, the settlement proceeds he received from ECI and Cheng were not part of his bankruptcy estate. He does not contest that the proceeds a debtor receives from a cause of action accruing prior to the time the debtor files his bankruptcy petition are property of his bankruptcy estate. Instead, he asserts that because ECI did not fire him and abandon its merger with CBS until after Plumlee filed his petition, Plumlee's cause of action against ECI and Cheng arose post-petition, so the settlement payment he received from ECI and Cheng is not property of his bankruptcy estate.

The property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Congress intended that courts broadly construe the scope of § 541(a)(1), and that bankruptcy estate property encompass both tangible and intangible property, including causes of action existing at the time the debtor files his bankruptcy petition. H.R.Rep. No. 95–595, at 3678 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; S.Rep. No. 95–989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. Moreover, as the Supreme Court held in *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), post-petition assets that are "sufficiently rooted in the pre-bankruptcy past" are part of the bankruptcy estate. *Id.* at 380, 86 S.Ct. 511; *see also In re Andrews,* 80 F.3d 906, 910 (4th Cir.1996) (holding that a debtor's post-petition payments received pursuant to a noncompetition agreement predating his bankruptcy petition were property of the bankruptcy estate because they were "plainly rooted in, and [grew] out of, [his] pre-petition activities"). This court has held that such assets include claims accruing post-petition that are based on events taking place prior to the commencement of the bankruptcy action. *Field v. Transcontinental Ins. Co.,* 219 B.R. 115, 118–120 (E.D.Va.1998) (holding that a debtor's bad faith claim against an insurer was property of his bankruptcy estate, even though the debtor did not request indemnification until eight months after he filed his bankruptcy petition, because the automobile accident for which the debtor needed coverage occurred four months before he filed his petition).

In this case, although Plumlee filed his bankruptcy petition prior to his termination, the collapse of the CBS–ECI

---

**2.** The significance of the potential bankruptcy asset at issue, $225,000, is also a factor to be weighed, together with any prejudice to Plumlee in this regard. Given the size of the unpaid debt to Crestar by Plumlee in the bankruptcy proceeding, this factor weighs in favor of Crestar's motion to reopen the proceeding to ascertain if the substantial "new" asset is part of the bankruptcy estate.

merger, and the commencement of his suit against ECI and Cheng, Plumlee's claim against ECI and Cheng was "sufficiently rooted" in Plumlee's pre-petition activities. *Plumlee eventually recovered not for his breach of contract claims, which arose from his post-petition termination and the abandoned merger, but rather pursuant to his fraud claim. As the bankruptcy court correctly noted, Plumlee's fraud claim rested on the activity of Cheng and ECI in the six months prior to the filing of the bankruptcy petition.* During Plumlee's merger negotiations with Cheng, Cheng misled Plumlee about ECI's intent to go through with the ECI–CBS merger, to assume CBS's debts, and to employ Plumlee. The jury in Plumlee's case against ECI and Cheng found that such behavior entitled Plumlee to compensation for fraud, but the jury also found that no employment contract existed, and that the parties had not created a contract to merge. Thus, the jury's award, and the subsequent settlement payment, were based on events taking place prior to the December 27, 1991, bankruptcy petition. Moreover, the fact that some of Plumlee's injuries from ECI's and Cheng's fraud did not occur until after he filed his petition does not change the result. *See Field,* 219 B.R. at 119 n. 9 ("Even when a debtor's claim is grounded in prepetition circumstances, his estate can recover for injury occurring postpetition."). Accordingly, the bankruptcy court properly ruled that the settlement proceeds that ECI and Cheng paid to Plumlee were part of Plumlee's bankruptcy estate.

Plumlee additionally argues that even if the bankruptcy court correctly ruled that the settlement proceeds are property of his bankruptcy estate, the court should have held that the new trustee, Stackhouse, is estopped from making a claim because of the former trustee's, Alexander Smith's, September 26, 1996, letter. In that letter, Smith, who was the original trustee of Plumlee's estate, indicated that the estate had no interest in any claim that

Plumlee had against ECI and Cheng for breach of an employment or merger agreement. Plumlee maintains that he pressed on with his lawsuit based upon Smith's assurances.

The doctrine of equitable estoppel prevents a party from enforcing certain rights against another, if that party induced the other to act to his detriment based on the reasonable belief that the party would waive those rights. *See, e.g., United States ex rel. Noland Co. v. Wood,* 99 F.2d 80, 83 (4th Cir.1938). In this case, the doctrine does not apply. At the time that Smith sent his letter to Plumlee, he was no longer serving as trustee of Plumlee's bankruptcy estate. The bankruptcy court discharged Smith and closed Plumlee's case four years earlier. When the court reopened Plumlee's case, Smith did not resume his position as trustee. Rather, a new trustee was appointed. Smith's letter did not bind Plumlee's creditors or the new trustee. Moreover, Smith's letter merely stated that the bankruptcy estate would have no interest in Plumlee's breach of contract claims, since those claims involved post-petition events. The letter said nothing about Plumlee's fraud claim, which concerned pre-petition activities. Based on these facts, Smith's letter did not prevent Plumlee's reopened bankruptcy estate from seeking Plumlee's settlement proceeds, nor was it reasonable for Plumlee to assume that the letter did so.

In light of the fact that the bankruptcy court correctly ruled that Plumlee's settlement payment is property of his bankruptcy estate, and that the estate was not estopped from claiming that payment, the court's summary judgment order was proper.

### IV. Conclusion

For the reasons stated above, the bankruptcy court's order to reopen Douglas C. Plumlee's bankruptcy case and its subsequent summary judgment order are **AFFIRMED.**[3]

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for both parties and to the Bankruptcy Court.

It is so **ORDERED.**

---

3. The potentially unfair result in this case is troubling, although legally correct. As noted above, Crestar filed its motion to reopen only four months after Plumlee received his settlement proceeds from Cheng and ECI, but many years had passed since the bankruptcy court closed Plumlee's estate. Moreover, Plumlee claims to have pressed forward with his claim against Cheng and ECI based upon the opinion he received from the estate's former trustee that the estate had no interest in any proceeds from the breach of contract claim. This representation does not legally support a claim for promissory estoppel. Nonetheless, the outcome is somewhat troubling, even though the law supports the bankruptcy court's rulings and the reopening of the case. *But see supra* note 2 (discussing Crestar's interest in administering the settle-

ment proceeds as a substantial "new" asset of the bankruptcy estate).