Daniel WILLIAMSON, Plaintiff-Appellant,

WESTWIND HOLDINGS, LLC, Plaintiff,

v.

HI-LITER GRAPHICS, LLC and Craig Faust,
Defendants-Respondents.

Court of Appeals

*No. 2011AP838. Submitted on briefs January 11, 2012.
—Decided February 29, 2012.*

2012 WI App 37

(Also reported in 811 N.W.2d 866.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael P. Dunn* of *Kerkman & Dunn* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eric L. Maassen* of *Foley & Lardner LLP* of Milwaukee and *William J. Katt, Jr.,* of *Foley & Lardner LLP* of Chicago.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. BROWN, C.J. The sole issue in this case is whether Daniel Williamson's misrepresentation claims against Hi-Liter Graphics, LLC and Craig Faust are part of his bankruptcy estate such that he had no standing to sue in state court. The alleged misrepresentations *occurred* prior to the bankruptcy petition being filed, but Williamson claims he did not *discover* that the injury had occurred until more than one year after the filing. Federal case law reveals that claims which are "sufficiently rooted in the pre-bankruptcy past" belong to the bankruptcy estate. We hold that Wisconsin's "discovery of injury" rule will not save Williamson here because that rule's purpose is to mark when the statute of limitations begins to run in state tort actions. That rationale, a judicially created exception to our state's tort statute of limitations, cannot be used by Williamson to usurp the right of the federal bankruptcy estate to bring that action. Because Williamson's financial interest in the misrepresentation claim arose prior to the filing of his bankruptcy petition, it is the property of his bankruptcy estate and he has no standing to sue. We affirm.

¶ 2. All of Williamson's misrepresentation claims are based on the same set of facts alleged in his amended complaint.[1] In 2007, Faust, acting as Hi-Liter's agent, negotiated the acquisition of some of The Peloton Group, Inc. (TPG) assets from TPG's secured

---

[1] The original complaint was filed on June 3, 2010, but was later amended to drop some of the claims. Both the original and amended complaints were filed by Williamson and Westwind Holdings, LLC. However, Westwind's claims against Hi-Liter and Faust were not dismissed at the trial court level and are not the subject of this appeal. We limit our discussion to the misrepresentation claims in the amended complaint that are the subject of this appeal.

lender. Williamson is the sole owner of TPG. At the time of the sale, TPG had issued checks to pay in full outstanding withholding tax obligations owed to the United States and to the state of Wisconsin. Allegedly, Faust "orally agreed and represented to Williamson that Hi-Liter would honor the withholding tax check payments." It never did so.

¶ 3. After the amended complaint was filed, Hi-Liter[2] moved to dismiss, contending Williamson had no standing to pursue the misrepresentation claims. Both parties submitted briefs and affidavits revealing that Williamson had filed for bankruptcy in April 2008, after the alleged misrepresentations had taken place but before the state assessed Williamson for unpaid withholding tax payments in May 2009. The trial court dismissed Williamson's complaint for lack of standing, finding that it was "sufficiently rooted" in Williamson's prebankruptcy past and therefore belonged to his bankruptcy estate.

■

¶ 4. Although Hi-Liter moved to dismiss, because parties on both sides submitted briefs with attached affidavits, and because the trial court reviewed that information and referenced it in its decision, we review the order as a grant of summary judgment. *See* WIS. STAT. § 802.06(3) (2009–10)[3]; *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶ 2, 296 Wis. 2d 273, 722 N.W.2d 633 ("When, on a motion to dismiss, parties present matters outside the pleadings, the motion should be processed as one for

---

[2] We will refer to the respondents collectively as Hi-Liter for the remainder of this opinion.

[3] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

summary judgment."). The standard of review for summary judgment is well known and we will not repeat it here other than to state that we conduct a de novo review to determine whether the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987) (citing Wis. Stat. § 802.08(2)). Here, Hi-Liter accepts the facts in the amended complaint as true for the purposes of this appeal and the summary judgment motion, so the relevant facts are not in dispute. Thus, we need only decide whether the facts, as alleged, entitle Hi-Liter to judgment as a matter of law.

¶ 5. The statute governing property of a bankruptcy estate, 11 U.S.C.A. § 541(a)(1) (West 2012), creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."[4] The statute is intentionally broad, with the purpose of encouraging reorganization and protecting creditors. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–07 (1983). The 7th Circuit has gone so far as to state that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *See In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996). The statute is temporally

___

[4] 11 U.S.C.A. § 541 (West 2012) also contains some exceptions to the broad statement of what is the property of the estate, but those exceptions are not relevant to this opinion. We additionally note that although the current version of § 541 on Westlaw shows an effective date of December 22, 2010, the parties do not dispute the applicability of the relevant language in § 541(a)(1) to this case.

limited, however, to interests in property that exist as of the date the action is commenced. *See id.* We use federal law to determine whether an interest is property of a bankruptcy estate under § 541, but state law defines property interests. *See In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004).

¶ 6. The parties disagree on only one issue—how to apply the temporal limitation of 11 U.S.C.A. § 541 to the facts of this case. Williamson argues that the misrepresentation claims did not accrue under state law until he suffered an injury through the 2009 assessment for unpaid withholding taxes, so it was not a property interest that he possessed when he filed for bankruptcy in 2008. Hi-Liter argues that because the ground was laid for the misrepresentation claims *before* Williamson filed a petition for bankruptcy, the claims were "sufficiently rooted in the pre-bankruptcy past" such that it is property of the bankruptcy estate. *See Segal v. Rochelle*, 382 U.S. 375, 380 (1966). Both Williamson and Hi-Liter focus on four cases to make their arguments: *Segal*, 382 U.S. 375; *In re Plumlee*, 236 B.R. 606 (E.D. Va. 1999); *In re Strada Design Assocs., Inc.*, 326 B.R. 229 (Bankr. S.D.N.Y. 2005); and *Witko*, 374 F.3d 1040.

¶ 7. We begin our analysis with *Segal*,[5] which deals with a loss-carryback tax refund. *Segal*, 382 U.S. at 376. Prior to filing the bankruptcy petition, the Segals had fulfilled two "elements" toward realization of

---

[5] As both of the parties point out, *Segal v. Rochelle*, 382 U.S. 375, 379 (1966), analyzed a predecessor to 11 U.S.C.A. § 541, not § 541. However, as Respondents note, *Segal* has continued to be applied with reference to § 541. *See, e.g., In re Plumlee*, 236 B.R. 606, 611 (E.D. Va. 1999); *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004); *In re Strada Design Assocs., Inc.*, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005).

the refund—paying income tax within the last three years and having a net loss for the current year on the date of the bankruptcy filing—but they could not claim the refund until the end of the year, after the bankruptcy petition was filed. *Id.* at 380. The United States Supreme Court held that the refund was property of the bankruptcy estate in part because it was "sufficiently rooted in the pre-bankruptcy past." *Id.* As Hi-Liter points out, the Court reached this conclusion despite the fact that when the bankruptcy petition was filed, the Segals had no presently enforceable right to a refund—they had to wait until the end of the year to see how the year turned out.

¶ 8.　Next, we look at cases since *Segal* that have applied *Segal*'s "sufficiently rooted" rationale to 11 U.S.C.A. § 541. In *Plumlee*, which resembles this case most closely, Plumlee, who was president of a business, agreed to merge with a second business and become vice-president of the new business. *Plumlee*, 236 B.R. at 608. He came to that agreement with the president of the second business in July 1991. *Id.* Plumlee began working for the second business right away in July 1991, and then filed for bankruptcy at the end of 1991. *Id.* By that time no merger had occurred. *Id.* Then, in January 1992, Plumlee was fired and the merger was called off. *Id.* Plumlee sued the second business and its president for fraud, and the bankruptcy trustee filed a complaint on behalf of the estate to recover the proceeds of the lawsuit. *Id.* at 608–09. The *Plumlee* court ultimately held that Plumlee's fraud claim was "sufficiently rooted" in Plumlee's pre-petition past despite the fact that his termination and the collapse of the merger occurred after his petition was filed. *Id.* at 612. The court observed:

491

> As the bankruptcy court correctly noted, Plumlee's fraud claim rested on the activity of Cheng and ECI in the six months prior to the filing of the bankruptcy petition . . . . Moreover, the fact that some of Plumlee's injuries from [the] fraud did not occur until after he filed his petition does not change the result.

*Id.* (emphasis omitted).

¶ 9. Plainly, Williamson's case is like *Plumlee*— the misrepresentations and Williamson's reliance on them occurred pre-petition. Also like *Plumlee*, at least part of the injury occurred pre-petition, since, according to Williamson's complaint, Hi-Liter never intended to pay the outstanding withholding taxes as promised. As Hi-Liter points out, the misrepresentations were made and relied on in 2007 and they pertained to 2007 tax liability. All that occurred postpetition was the government assessment that allowed Williamson to discover that the taxes were unpaid. Therefore, as in *Plumlee*, the fact that some of Williamson's injuries—in this case, his being assessed by the government for the unpaid taxes—"did not occur until after he filed his petition does not change the result." *See id.* What matters is that Williamson's misrepresentation claims "rested on the activity of" Hi-Liter in the year "prior to the filing of the bankruptcy petition." *See id.* (emphasis omitted).

¶ 10. Despite the obvious applicability of *Plumlee*, Williamson urges us to interpret *Strada* and *Witko* as standing for the proposition that unless a claim has fully accrued under state law before the bankruptcy petition is filed, it does not belong to the bankruptcy estate. We simply do not see that proposition in either of those cases. *Strada* involved a legal malpractice claim arising out of bankruptcy advice. *Strada*, 326 B.R. at 232. The *Strada* court held that the claim had fully accrued under state law at the time of the filing of the

492

bankruptcy petition. *See id.* at 237. So, the fact situation in *Strada* was totally different, for one thing. For another thing, the *Strada* court point-blank stated that "the cause of action accrues regardless of when the plaintiff discovers the injury." *Id.* We agree with Hi-Liter that this means the following: a pre-petition accrual of a claim is *sufficient* to bring that claim within the estate. But *Strada* does not say, and in fact expressly rules out, that pre-petition accrual is *necessary*.

¶ 11. *Witko* was also a legal malpractice claim and involved a suit against the complainant's former divorce attorney for alleged negligence in an alimony dispute. *Witko,* 374 F.3d at 1042. There, the court held that the complainant's malpractice suit accrued after the adverse outcome in the state court even though the negligent actions of the attorney were allegedly occurring before the bankruptcy petition. *Id.* at 1044. So, at first blush, it may appear as though this case would favor Williamson. But not really. The *Witko* court took care to differentiate the legal malpractice situation before it from other kinds of torts. The court wrote:

> The machinations of legal malpractice, especially the element requiring the conclusion of judicial proceedings, distinguish legal malpractice actions from virtually all other tort claims. Although proximate harm usually occurs in close temporal proximity to tortious conduct, legal malpractice harm often arises well after the attorney's failures . . . .
>
> Witko did not suffer any harm from the alleged legal malpractice prior to or contemporaneous with filing his bankruptcy petition . . . . Witko's malpractice cause of action was unknown, not even rising to a hope; the most pessimistic curmudgeon could not anticipate that, months later, Witko would lose his alimony claim due to his attorney's malpractice.

*Id.*

493

¶ 12. So, in *Witko*, the legal malpractice claim was merely hypothetical or speculative until the actual bad result. Not so here. The fraud occurred before the bankruptcy petition was filed. The harm was not speculative. By not honoring the checks, Hi-Liter had to have known that it was exposing Williamson to harm. That the result of the harm was an assessment by the state for unpaid withholding tax payments is of no moment. What is of moment is the fact that Hi-Liter did not allow the checks to go through so as to make withholding payments—an act which occurred pre-bankruptcy. Therefore, Hi-Liter's act was "sufficiently rooted in the pre-petition past" and is part of the bankruptcy estate. That it was not discovered by Williamson until he got the assessment does not mean that harm did not occur when Hi-Liter failed to live up to its promise.

¶ 13. *Witko* is important to the analysis for another reason. In *Strada*, the court wrote: "Although the accrual date for state law purposes is important, it is not always critical in deciding whether a cause of action will be 'property of the estate.' " *Strada*, 326 B.R. at 236. The *Witko* court's analysis of the legal malpractice action before it is a case in point. There, the court looked to Florida law in determining when a malpractice action accrued. *Witko*, 374 F.3d at 1043. Witko was a Florida resident who sued for malpractice in a Florida court. Under Florida law, a cause of action for legal malpractice has three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) the attorney's negligence was the proximate cause of loss to the client. *Id.* at 1043–44. Discussing the third element, the Florida Supreme Court unambiguously held that until the underlying action is concluded with an outcome adverse to the client, "a

malpractice claim is hypothetical and damages are speculative." *Id.* at 1044 (quoting *Silverstrone v. Edell,* 721 So. 2d 1173, 1175 (Fla. 1998)). We do not have anything like that in Wisconsin saying a fraud action is wholly speculative until the victim knows the amount of damage. Rather, we have law that says when there is a promise, which promise was relied upon to the promisee's detriment, a fraud has occurred.[6] All but the actual state assessment occurred before the bankruptcy petition even if Williamson did not know it at the time. There well may be a cause of action here. But if so, it belongs to the bankruptcy estate, not to Williamson. We affirm.

*By the Court.*—Order affirmed.

---

[6] To state a claim for intentional misrepresentation, the following allegations must be made: (1) the defendant made a factual representation, (2) which was untrue, (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false, (4) the defendant made the representation with intent to defraud and to induce another to act upon it, and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment. *Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA,* 223 Wis. 2d 704, 718–19, 590 N.W.2d 1 (Ct. App. 1998).