Stec v. Fuzion Inv. Capital, LLC, 2012 NCBC 24.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 4241

JEFFREY R. STEC,

                Plaintiff,

v.

FUZION INVESTMENT CAPITAL,
LLC, FUZION CAPITAL, LLC, FUZION
CAPITAL HOLDINGS, LLC, EDWARD
F. SAMPSON, Individually and on
behalf of SAMPSON FAMILY TRUST,
RON POLISENO, Individually,
MICHELLE MICHAEL, Individually
and on behalf of ALLSTATE
FINANCIAL GROUP, INC., JOHN
MICHAEL, Individually and on behalf of
ALLSTATE FINANCIAL GROUP, INC.,
ALLSTATE FINANCIAL GROUP, INC.,
BF SOUTHEAST, LLC, DAN FAHEY,
Individually, and LUMOUS HOLDINGS,
LLC,

                Defendants.

**ORDER & OPINION**

*Martineau King, PLLC by L. Kristin King for Plaintiff.*

*Bishop, Capitano & Moss, P.A. by J. Daniel Bishop for Defendant Fuzion Investment Capital, LLC.*

*Wilson & Ratledge, PLLC by Michael A. Ostrander for Defendants Lumous Holdings, LLC; Dan Fahey; BF Southeast, LLC; Fuzion Capital, LLC; Fuzion Capital Holdings, LLC; Edward Sampson; Ron Poliseno; Michelle Michael; John Michael; Allstate Financial Group, Inc.; and the Sampson Family Trust.*

*Rayburn Cooper & Durham, P.A. by David S. Melin for Defendant Thomas Wilson.*

*Poyner & Spruill, LLP by Rick Kane for Defendant Thomas Wilson.*

Murphy, Judge.

{1}     **THIS MATTER** is before the Court upon Defendants Fuzion Investment Capital, LLC ("FIC"); Fuzion Capital, LLC ("FC"); Fuzion Capital Holdings, LLC ("FCH"); Edward F. Sampson ("Sampson"); Sampson Family Trust (" Sampson Trust"); Ron Poliseno; Michelle Michael ("M. Michael") and Allstate Financial Group, Inc. ("Allstate"); John Michael ("J. Michael"); BF Southeast, LLC ("BF"); Dan Fahey ("Fahey"); and Lumous Holdings, LLC's ("Lumous") (collectively "Defendants") Motion to Dismiss.  After hearing from the parties on October 11, 2011, and having considered the matters of record and contentions of counsel, the Court, **GRANTS** in part, and **DENIES** in part, Defendants' Motion to Dismiss.

I.

PROCEDURAL BACKGROUND

{2}     Plaintiff first filed this action on January 31, 2011. (Defs.' Br. Supp. Mot. Dismiss 2.) The case was subsequently removed by Defendants to federal court on February 2, 2011, to have the federal court determine what relief, if any, might be available to Plaintiff under COBRA, 29 U.S.C. § 1161.  (Defs.' Br. Supp. Mot. Dismiss 2.)  After removal, the action was transferred to the United States Bankruptcy Court for the Western District of North Carolina and voluntarily dismissed by Plaintiff on March 1, 2011.  (Defs.' Br. Supp. Mot. Dismiss 2–3.)  The present action was filed on March 3, 2011, designated to the Business Court on April 6, 2011, and assigned to this Court on March 7, 2011.  (Defs.' Br. Supp. Mot. Dismiss 3; Assignment Order 1.)

{3}     Defendants' filed their Motion to Dismiss on June 10, 2011, Plaintiff filed his Response to Defendants' Motion on June 30, 2011, and Defendants replied to Plaintiff's Response on July 13, 2011. (Defs.' Mot. Dismiss 4; Pl.'s Resp. Defs.' Mot. Dismiss 24; Defs.' Reply Supp. Mot. Dismiss 12.)

{4}     This Court heard Defendants' Motion to Dismiss on October 11, 2011.

II.

STATEMENT OF FACTS

{5}     While ordinarily the Court does not make findings of fact in connection with motions to dismiss, as such motions do "not present the merits, but only

[determine] whether the merits may be reached," *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986), for purposes of this Order and Opinion's 12(b)(6) analysis, the Court recites those facts from the pleadings that are relevant to the Court's legal determinations.

{6} Plaintiff is a resident of North Carolina and was employed by FIC as President and Chief Operating Officer ("COO") of its Charlotte based operations. Plaintiff is also the owner of Rascal Holdings, LLC, ("Rascal") which owned Fitness Management Group, Inc. ("FMG"). (Am. Compl. ¶ 1.)

{7} In late December 2009, FMG entered into Chapter 11 Bankruptcy and sold its assets to Defendant FIC. (Pl.'s Resp. Defs.' Mot. Dismiss 3–4.) Expecting that the Bankruptcy Court would approve the sale, Plaintiff and FIC entered into the Amended and Restated Employment Agreement ("Employment Agreement"). (Pl.'s Resp. Defs.' Mot. Dismiss 4.) The Employment Agreement named Plaintiff President and COO of FIC, served as the employment and operating agreement for FIC, detailed Plaintiff's employment benefits and responsibilities, and imposed restrictions on Defendants FC and Sampson Trust's ability to incur debt on behalf of the company or transfer equity. (Pl.'s Resp. Defs.' Mot. Dismiss 4–5.) On September 23, 2010, Plaintiff was suspended with pay from his position as President and COO of FIC, and on December 8, 2010, Defendant FIC officially terminated Plaintiff's employment. (Pl.'s Resp. Defs.' Mot. Dismiss 5.)

{8} Before being terminated, Plaintiff personally filed for Chapter 7 Bankruptcy on August 11, 2010. (Pl.'s Resp. Defs.' Mot. Dismiss 6.) On February 11, 2011, Plaintiff listed his Employment Agreement as an executory contract on the Schedule G of his Bankruptcy petition. (Pl.'s Resp. Defs.' Mot. Dismiss 6.) The Bankruptcy Trustee did not assume the Employment Agreement on or before April 12, 2011. (Pl.'s Resp. Defs.' Mot. Dismiss Ex. A.)

{9} Plaintiff's claims arise from alleged breaches of the Employment Agreement, the Membership Unit Transfer Agreement ("Transfer Agreement"), and the Amended and Restated Asset Purchase Agreement ("Asset Purchase Agreement"). The Employment Agreement was entered into by Plaintiff and FIC on

December 29, 2009, and subsequently ratified by FIC affiliates Defendants FC, Sampson Trust, FCH, Fahey, and BF. (Am. Compl. ¶ 28; Defs.' Br. Supp. Mot. Dismiss 4.) The Transfer Agreement was entered into by Plaintiff and FCH and transferred Plaintiff's real property interests to FCH. The Asset Purchase Agreement was entered into by FMG and FIC and dealt with the sale of FMG's assets to FIC while FMG was in bankruptcy. (Am. Compl. ¶¶ 30, 32.)

{10} Plaintiff alleges that Defendants violated the Employment Agreement by: terminating his employment prior to the end of the agreement; entering into other agreements prohibited by the Employment Agreement without his consent; failing to provide financing as required under the Employment Agreement; hiring another President; entering into a financing agreement with Defendant Allstate; violating the compensation benefits owed to Plaintiff under the Employment Agreement; and eliminating Plaintiff's opportunity to earn equity in the company. (Pl.'s Resp. Defs.' Mot. Dismiss 5–6.) Plaintiff has asserted claims for: (1) breach of contract, (2) tortious interference with contract, (3) intentional interference with business relations, (4) unfair and deceptive trade practices ("UDTP"), (5) usurpation of corporate opportunities, (6) violations of the North Carolina Wage and Hour Act ("Wage Act"), (7) intentional infliction of emotional distress ("IIED"), (8) breach of the implied covenant of good faith and fair dealing ("breach of good faith"), (9) fraud, and (10) punitive damages. (Am. Compl. pg. 23, 27–31, 33–37.)

{11} Plaintiff's breach of contract and tortious interference with contract claims arise from Defendants' actions with regard to the Employment Agreement. (Am. Compl. ¶¶ 128, 140.) Plaintiff's claim for intentional interference with business relations stems from allegations that particular Defendants induced other Defendants to breach the Employment Agreement, Transfer Agreement, and Asset Purchase Agreement. (Am. Compl. ¶¶ 146–47.) Plaintiff's claim for UDTP alleges that Defendants "conspired to prevent the performance of [Plaintiff's] Employment Agreement." (Am. Compl. ¶ 156.) Plaintiff's claim for usurpation of corporate opportunities stems from allegations that Defendant Simpson allowed or caused FIC to breach the Employment Agreement with Plaintiff. (Am. Compl. ¶ 164.)

Plaintiff's claim for violation of the Wage Act is for both earned and unearned salary payments that would have been payable to him under the Employment Agreement if he had not been terminated. (Am. Compl. ¶ 175.) Plaintiff's claim for IIED and breach of the implied covenant of good faith and fair dealing are based on allegations that Defendants coerced Plaintiff into signing away his rights under the Employment Agreement. (Am. Compl. ¶¶ 180, 190.) Lastly, Plaintiff's claim for fraud is based on Defendants' alleged misrepresentations to Plaintiff that Defendants would perform their obligations under the Employment Agreement and Asset Purchase Agreement. (Am. Compl. ¶ 194.)

### III.
### STANDARD OF REVIEW

{12} The question for the court on a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)). "[T]he pleadings, when taken as true, [must be] legally sufficient to satisfy the elements of at least some . . . recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (citing *Harris*, 85 N.C. App. 669, 355 S.E.2d 838).

{13} "'Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) . . . when some fact disclosed in the complaint necessarily defeats the plaintiff's claim.'" *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (quoting *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987)).

{14} When considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d

826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

IV.

ANALYSIS

A.

STANDING

{15}    Defendants argue that Plaintiff lacks standing to bring his claims because they arise from contracts that were entered into by the parties prior to Plaintiff's personal bankruptcy petition and thus the claims and contracts are assets that belong to the bankruptcy estate to be enforced by the bankruptcy trustee.  (Defs.' Br. Supp. Mot. Dismiss 6–7.)

{16}    "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss."  *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) (citing *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 525 S.E.2d 441 (2000)).  When "'considering a motion to dismiss for lack of subject matter jurisdiction, it is appropriate for the court to consider and weigh matters outside of the pleadings.'" *Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 327, 605 S.E.2d 161, 163 (2004) (quoting *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978)).

1.

CAUSES OF ACTION

{17}    A bankruptcy estate is created at the time that a bankruptcy action is filed and is composed of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1) (2006).  The legal interests held by the estate trustee include "all causes of action held by the debtor at the time the bankruptcy petition is filed," and the trustee succeeds to those causes of action, leaving the debtor without standing to bring an action.  *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988) (citing *Miller v. Shallowford Community Hosp. Inc.*, 767 F.2d 1556, 1559 (11th Cir. 1985)).  As representative of the bankrupt estate, the trustee "has the capacity to sue or be sued."  *Detrick v. Panalpina, Inc.*, 108 F.3d

529, 535 (4th Cir. 1997) (quoting *In re Richman*, 104 F.3d 654 (4th Cir. 1997)); *see also* 11 U.S.C. § 323(b) (2006). In this capacity, "the decision whether to pursue a claim or not is vested within the trustee's discretion." *Id.*

{18}   A cause of action is generally held by the debtor if it has accrued before the debtor files his bankruptcy petition. For most tort claims, a "cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." *Housecalls Home Health Care, Inc., v. State*, 200 N.C. App. 66, 71, 682 S.E.2d 741, 744 (2009). However, for the torts of IIED and fraud, accrual "occurs at the time the fraud [or injury] is discovered or should have been discovered with the exercise of reasonable diligence." *S.B. Simmons Landscaping & Excavating, Inc. v. Boggs*, 192 N.C. App. 155, 162, 665 S.E.2d 147, 151 (2008); *accord Russell v. Adams*, 125 N.C. App. 637, 641, 482 S.E.2d 30, 33 (1997) (stating that an action for emotional distress does "not accrue until the plaintiff 'becomes aware or should reasonably have become aware of the existence of the injury.'" (quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985))).

{19}   In addition to claims that accrue prior to the debtor filing for bankruptcy, the bankruptcy estate also includes "post-petition assets that are 'sufficiently rooted in the pre-bankruptcy past.'" *Plumlee v. Plumlee*, 236 B.R. 606, 611 (E.D. Va. 1999). Courts have held that post-petition assets can include legal claims connected to a debtor's termination from employment when the claims were "'sufficiently rooted' in [the debtor's] pre-petition activities." *Id.* at 612.

2.

EXECUTORY CONTRACTS

{20}   The Bankruptcy Code also directs how executory contracts are to be handled in bankruptcy. An executory contract is "'a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'" *Meiburger v. Endeka Enters., LLC.*, 383 B.R. 616, 619 (E.D. Va. 2007) (quoting Vern Countryman, *Executory*

*Contracts in Bankruptcy: Part I,* 57 Minn. L. Rev. 439, 460 (1973)); *see generally Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984) (adopting Professor Countryman's definition of executory contract).

{21}    After the bankruptcy petition is filed, "the trustee, . . . may assume or reject any executory contract . . . of the debtor."  11 U.S.C. § 365(a) (2006).   In Chapter 7 bankruptcy, "if the trustee does not assume or reject an executory contract . . . within 60 days after the order for relief, . . . then such contract or lease is deemed rejected."  *Id.* at § 365(d)(1).   However, "'rejection does not change the substantive rights of the parties to the contract, but merely means the bankruptcy estate itself will not become a party to it.'"  *In re Alongi*, 272 B.R. 148, 153 (Bankr. D. Md. 2001) (quoting Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding Rejection*, 59 U. Colo. L. Rev. 845, 848–49 (1988)).

3.

ANALYSIS OF STANDING

{22}    In order to determine if Plaintiff's claims or contracts belong to the estate, the Court must determine: (1) whether the contracts are executory contracts assumed by the bankruptcy trustee, and (2) when Plaintiff's causes of action accrued.

{23}    The Employment Agreement in this case is a six-year employment contract that required Plaintiff to perform services for Defendants, and in return, *inter alia*, required Defendants pay Plaintiff for the services rendered.  (Am. Compl. ¶¶ 28–43.)  Thus the Agreement was, at the time Plaintiff filed for bankruptcy, a contract that placed unperformed obligations on both parties that if unmet, would result in a material breach.  As defined in *Meiburger*, this is an executory contract. *Meiburger*, 383 B.R. 616, 619 (2007).  As to the Transfer Agreement and the Asset Purchase Agreement, it is unclear from the record whether, at the time Plaintiff filed for bankruptcy, there were any continuing obligations owed by any of the parties under those contracts.  Accordingly, the Court can not find them to be executory.

{24}  Turning next to whether the Employment Agreement was assumed by the bankruptcy trustee, the Court finds that the Employment Agreement was listed on the Schedule G that Plaintiff filed with the bankruptcy court, and that there is no evidence before the court that the trustee ever assumed the contract.  (Pl.'s Resp. Defs.' Mot. Dismiss Ex. A. 7.)   Because the bankruptcy trustee did not assume the Employment Agreement within sixty (60) days of Plaintiff filing for bankruptcy, pursuant to 11 U.S.C. § 365(d)(1), the Employment Agreement is deemed rejected, and thus, not the property of the bankruptcy estate.

{25}  As to when Plaintiff's causes of action accrued, the Court finds that all of Plaintiff's claims except fraud arise from alleged actions taken by the Defendants on or after September 1, 2010.  (Am. Compl. ¶¶ 71, 131(b), 139–40, 145–47, 156, 164, 169, 190, 194–95.)  Accordingly, these actions accrued after Plaintiff had filed for bankruptcy on August 11, 2010.  As for Plaintiff's claim of fraud, Plaintiff alleges that Defendants' misrepresentations began around the time the above-referenced agreements were signed in 2009.  (Am. Compl. ¶¶ 194–95.)  However, claims for fraud do not accrue until the fraud is discovered, or could have reasonably been discovered, which in this case was not until after Plaintiff was suspended from his employment on September 23, 2010.  Accordingly, Plaintiff's claim for fraud did not accrue until after September 23, 2010.

{26}  Despite the fact that none of Plaintiff's claims accrued prior to the filing of his bankruptcy action, a bankruptcy estate can include "post-petition assets that are 'sufficiently rooted in the pre-bankruptcy past.'" *Plumlee*, 236 B.R. at 611. As previously noted, all of Plaintiff's claims except fraud arise from alleged actions taken by the Defendants from September 1, 2010 through the present.  (Am. Compl. ¶¶ 71, 131(b), 139–40, 145–47, 156, 164, 169, 190, 194–95.)  Accordingly, none of these claims are sufficiently rooted in the estate's pre-bankruptcy past and thus are not property of the estate. *See Housecalls Home Health Care, Inc.*, 200 N.C. App. at 70, 682 S.E.2d at 744 (discussing generally when claims in contract and tort accrue); *S.B. Simmons Landscaping & Excavating, Inc.*, 192 N.C. App. at 162, 665

S.E.2d at 151 (discussing when a claim for fraud accrues); *Russell*, 125 N.C. App. at 641, 482 S.E.2d at 33 (discussing when a claim for IIED accrues).

{27} As to whether Plaintiff's claim for fraud is sufficiently rooted in the pre-bankruptcy past, this Court finds the *Plumlee* case persuasive. In *Plumlee*, after the debtor's discharge from personal bankruptcy, the debtor brought an action against his prior employer for alleged violations of a pre-petition merger agreement that was entered into and negotiated by the parties prior to debtor's filing for bankruptcy. *Plumlee*, 236 B.R. at 612. At trial, the debtor claimed that the defendants had misled him about their intention to go through with the pre-petition merger agreement, and that his former employer was liable for breach of contract and fraud. The jury agreed. *Id.* The court in *Plumlee* found that because the acts supporting the debtor's claim of fraud had occurred prior to the debtor filing for bankruptcy, the award that he recovered was the property of the estate. *Id.* Here, the facts are almost identical. While no award has been given to Plaintiff, his claim is based on acts he alleges occurred at the time he signed the Employment and Asset Purchase Agreements, which in this case was prior to the filing of his petition for bankruptcy. Accordingly, the acts supporting Plaintiff's claim for fraud are sufficiently rooted in Plaintiff's pre-petition activities and the property of the bankruptcy estate. Therefore, this Court finds that Plaintiff has standing to bring all of his claims except the claim of fraud which, because of its connection with Plaintiff's pre-petition activities, is the property of the bankruptcy estate. For this reason, Defendants' Motion to Dismiss Plaintiff's claim of fraud is **GRANTED**.

B.

BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

{28} On a motion to dismiss, the Court must determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris*, 85 N.C. App. at 670, 355 S.E.2d at 840. "In a breach of contract action, a complainant must show that there is '(1) existence of a

valid contract, and (2) breach of the terms of that contract.'" *Sanders v. State Personnel Comm'n*, 197 N.C. App. 314, 321, 677 S.E.2d 182, 187 (2009) (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 481, 574 S.E.2d 76, 91 (2002)). In addition, "'[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002) (quoting *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)).

{29}     Looking to Plaintiff's Compliant, this Court cannot take into consideration Plaintiff's ability to prove the claims, only whether they have been adequately pled. Here the Court finds that Plaintiff has alleged the existence of a valid Employment Agreement entered into between Plaintiff and Defendants FIC, FC, FCH, Sampson, Sampson Trust, BF, Fahey, and Lumous. (Am. Compl. ¶ 28.) The court also finds that Plaintiff has alleged a breach of the Employment Agreement, and that "[b]y attempting to force Plaintiff Stec to surrender his contract rights, Defendants breached the implied covenant of good faith and fair dealing." (Am. Compl. ¶¶ 131 a-g, 190.)

{30}     Defendants argue that Plaintiff will not be able to prove his claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Defendants Lumous and Sampson because their names do not appear on the agreement. (Defs.' Br. Supp. Mot. Dismiss 8–9.) However, this argument is unpersuasive. Plaintiff has alleged that while Defendants Lumous and Sampson did not initially sign the agreements, they became parties through subsequent ratification. (Am. Compl. ¶ 28.) After reviewing the Amended Complaint *in toto* this Court finds that Plaintiff has sufficiently alleged that Defendants entered into, and breached, the Employment Agreement in a way that violated the implied covenant of good faith and fair dealing. Accordingly, Plaintiff has sufficiently pled his claim to withstand the Motion to Dismiss. Therefore, Defendants' Motion to Dismiss as to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing is **DENIED**.

## C.

## TORTIOUS INTERFERENCE WITH CONTRACT AND INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

{31}    The elements of a tortious interference with a contract claim are:

(1) a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to the plaintiffs.

*Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 604, 646 S.E.2d 826, 832 (2007). "An action for tortious interference with [business relations] is based on conduct by the defendants which prevents the plaintiffs from entering into a contract with a third party." *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (citing *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992)).

{32}    "A motion to dismiss . . . claim[s] of tortious interference [and intentional interference with business relations] is properly granted where the complaint shows the interference was justified or privileged." *Id.* (citing *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988)) (tortious interference with contract); *Walker*, 137 N.C. App. at 393, 529 S.E.2d at 242 (intentional interference with prospective advantage). "[I]nterference is [justified] if the defendants' motives . . . were . . . 'reasonably related to the protection of a legitimate business interest' of the defendant." *Pinewood Homes, Inc.*, 184 N.C. App. at 605, 646 S.E.2d at 832 (omissions in original) (quoting *Privette v. University of North Carolina*, 96 N.C. App. 124, 134, 385 S.E.2d 185, 190 (1989)). Because conduct can be privileged, North Carolina's courts have held that "the complaint must admit of no motive for interference other than malice." *Id.* at 605, 646 S.E.2d at 832–33 (citing *Privette*, 96 N.C. App. at 134–35, 385 S.E.2d at 191 (tortious interference with contract)); *Cline v. McCullen*, 148 N.C. App. 147, 152, 557 S.E.2d 508, 592 (2001) (interference with business relations). Malice, in the context of a tortious interference with contract claim, can be sufficiently shown

by alleging that non-outsiders "act for their own benefit." *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 499, 411 S.E.2d 916, 924 (1992). This isn't to say that a complaint can generally plead malice. *Pinewood Homes, Inc.*, 184 N.C. App. at 605, 646 S.E.2d at 833 ("general allegations of malice are insufficient as a matter of pleading." (citing *Equipment Co. v. Equipment Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965))).

{33} Additionally, non-outsiders "enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992). Such non-outsiders include "[o]fficers, directors, shareholders, and other corporate fiduciaries." *Embree*, 330 N.C. at 498, 411 S.E.2d at 924. Individuals who hold those positions "have 'a qualified privilege to interfere with contractual relations between the corporation and a third party.'" *Id.* (quoting *Wilson v. McClenny*, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964)). "'The acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation.'" *Id.* (quoting *Wilson*, 262 N.C. at 133–34, 136 S.E.2d at 578). However, the privilege is not absolute, and "is overcome when the means or the officer's motives are improper." *Id.*

{34} Plaintiff's claim for tortious interference with the Employment Agreement is against Defendants Allstate, Sampson Trust, Sampson, Policeno, and J. Michael. Plaintiff's claim for intentional interference with business relations is against all of the above-referenced Defendants except Sampson Trust. After reviewing the pleadings, this Court finds that its determination comes down to whether Plaintiff sufficiently alleged that Defendants acted without justification.

{35} Defendants Sampson Trust and Sampson are ratifying parties to the Employment Agreement. (Am. Compl. ¶ 28.) Sampson Trust is also a member and manager of FIC, the alleged breaching third-party, and Sampson is a trustee of Sampson Trust. (Am. Compl. ¶¶ 20, 23–24, 29.) Under *Embree*, Defendants Sampson and Sampson Trust's status as owners and or managers of the breaching party would make them non-outsiders. *Embree*, 330 N.C. at 498, 411 S.E.2d at 924.

Non-outsider Defendants Sampson and Sampson Trust are entitled to the presumption that they acted in the best interests of the company, but, this presumption can be rebutted by a showing that they acted for their own personal interest. *Id.* 330 N.C. at 498, 411 S.E.2d at 924. Here, Plaintiff only alleges that Defendants acted to get Plaintiff to give up pay and rights negotiated in the Employment Agreement and to get payment for outstanding legal fees. (Am. Compl. ¶¶ 63, 92.) The Amended Complaint does not allege that Defendants interfered for their own personal gain. To the contrary, Exhibit E to the Amended Complaint suggests that Plaintiff was terminated because of allegations concerning violations of the North Carolina Prepaid Entertainment Contracts Statute, which would suggest that Defendants acted for the benefit of the company. (Am. Compl. Ex. E ¶¶ 78–80.) While the intent of the parties is a question for the jury, Plaintiff must plead more than general allegations of malice. *Embree*, 330 N.C. at 499, 411 S.E.2d at 925; *Pinewood Homes*, 184 N.C. App. at 605, 646 S.E.2d at 832. Other than the above-referenced allegations, Plaintiff only makes general conclusions of malice and fails to allege that Defendants acted for their own personal interest. As a result, the Court concludes that Plaintiff has failed to sufficiently plead that Defendants Sampson Trust and Sampson, acted without justification and Defendants' Motion to Dismiss Plaintiff's claims for tortious interference with contract and intentional interference with business relations against Defendants Sampson and Sampson Trust is **GRANTED,** but without prejudice to Plaintiff to seek appropriate amendment of his Complaint.

{36} As to Defendants Allstate, Policeno, and J. Michael, none of these parties were managers or owners of FIC or any entity owning an interest in the breaching party. While Defendants argue that they should be entitled to non-outsider status because Allstate had been involved in the purchase of FIC assets, there is nothing in the record that shows that Allstate was a shareholder or other qualifying non-outsider. (Defs.' Br. Supp. Mot. Dismiss 10.) As such, Defendants Allstate, Policeno, and J. Michael are not entitled to the non-outsider presumption. Under these facts, the Court concludes that Plaintiff's allegations that Defendants

"schemed to replace Plaintiff Stec with Allstate Financial Group, J. Michael and Policeno, as operating management and have further schemed to transfer equity to Allstate Financial Group," (Am. Compl. ¶ 64) are sufficient to allege unjustifiable action on the part of Defendants Allstate, Policeno, and J. Michael. Accordingly, Defendants' Motion to Dismiss as to these Defendants is **DENIED.**

D.

UNFAIR AND DECEPTIVE TRADE PRACTICES

{37}    "To establish a claim [under the] unfair and deceptive trade practices [act ("UDTPA")], [plaintiff] must show: (1) that [defendant] committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to defendant." *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 41, 626 S.E.2d 315, 322 (2006). "'It is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1.'" *Id.* at 42, 626 S.E.2d at 323 (quoting *Branch Bank & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)). "[F]ailure to allege a necessary element defeats [a] claim for unfair and deceptive trade practices." *Id.*, at 42, 626 S.E.2d at 323 (citation omitted).

{38}    To recover under the UDTPA, substantial aggravating circumstances must be shown to accompany the breach of contract, which is why "[i]t is 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" *Id.* at 42, 626 S.E.2d at 323 (quoting *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002)).

{39}    In addition, North Carolina's appellate courts have consistently held that "employer-employee relationships do not fall within the intended scope of UDTPA." *Maurer v. SlickEdit, Inc.*, 2005 NCBC 1 ¶ 36 (N.C. Super. Ct. May 16, 2005), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%201.htm (citing

*Buie v. Daniel Int'l*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–20 (1982)). Specifically, claims based on an employee's termination relate to a company's internal corporate affairs rather than being "'in or affecting commerce' as set forth under the UDTPA." *Id.* at ¶ 39. While our courts have created exceptions to this rule, these cases are intensely fact specific. *Id.* at ¶ 36.

{40} Plaintiff's claim is based on both an alleged breach of contract and an employer/employee relationship. (Am. Compl. ¶ 156.) While Plaintiff has summarily recited the elements for a claim under the UDTPA in his Response to Defendants' Motion to Dismiss, he provides no factual or legal support for his contention that Defendants' alleged breach of the Employment Agreement was attended by aggravating circumstances or should be excused from our appellate courts' general policy of exempting employer employee relationships from UDTPA claims. The allegations in the Amended Complaint show that this claim is based on Defendants' alleged breach of Plaintiff's employment contract. This Court does not find any facts which would support the creation of another exception to the general rule that employer employee relationships fall outside the scope of the UDTPA. Therefore, Plaintiff has failed to demonstrate that Defendants' actions are "in or affecting commerce." Consequently, Plaintiff has failed to plead all the elements of a UDTPA claim and, therefore, this Court **GRANTS** Defendants' Motion to Dismiss as to this claim.

E.

USURPATION OF CORPORATE OPPORTUNITIES

{41} Plaintiff's claim for usurpation of corporate opportunities alleges that Defendant Sampson individually owed fiduciary duties to Plaintiff because of their relationship as co-managers of FIC. (Am. Compl. ¶¶ 162–63; Pl.'s Resp. Defs.' Mot. Dismiss 16.) The parties agree that any duties which Defendant Sampson would owe Plaintiff individually as a co-manager would be determined by Nevada Law, as FIC is a Nevada LLC. (Defs.' Br. Supp. Mot. Dismiss 14–15; Pl.'s Resp. Defs.' Mot. Dismiss 16–17.) *accord Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680–81, 657

S.E.2d 55, 63 (2008) (stating that the internal affairs doctrine suggests that the laws of the state of incorporation control the standard of care required of managers.)

{42}    A claim for usurpation of corporate opportunities is really a claim for breach of fiduciary duties. "The doctrine of corporate opportunity is 'a species of the duty of a fiduciary to act with undivided loyalty . . . .'" *Meiselman v. Meiselman*, 309 N.C. 279, 307, 307 S.E.2d 551, 568 (1983). Implicit in a claim for breach of fiduciary duty is that there is a fiduciary relationship. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). A fiduciary relationship has been defined by the North Carolina Supreme Court as:

> one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence, . . . [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*"

*Id.* at 652–53, 548 S.E.2d at 707–08 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (omission and alteration in original).

{43}    Under Nevada law, there is no support for the proposition that a manager of a corporation owes fiduciary duties to employees or holders of options for membership interests. While Plaintiff cites Nev. Rev. Stat. Ann. § 86.286 to support his contention that a fiduciary relationship exists, the cited statute begins with the following language: "to the extent that a . . . manager . . . has duties to a limited-liability company [or] to another . . . manager . . . ." NEV. REV. STAT. ANN. § 86.286(5) (2011). This language would indicate that it is far from established that such duties exist. While Nevada law provides a derivative right of action for members of an LLC, it only imposes fiduciary duties upon member-managers of corporate entities or managers who are employed by corporate entities, and violations of those duties can be enforced derivatively by equity owners. *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1224 (Nev. 1987).

{44}    This Court finds no authority under Nevada law that supports the imposition of an individual duty of good faith from Defendant Sampson to Plaintiff.

Absent a fiduciary relationship between the parties, Defendant Sampson owes no fiduciary duties to Plaintiff. Accordingly, Plaintiff has failed to state a claim for which relief can be granted and, therefore, Defendants' Motion to Dismiss with regard to the claim for usurpation of corporate opportunities is **GRANTED**.

F.

## NORTH CAROLINA WAGE & HOUR ACT

{45} Under the North Carolina Wage and Hour Act ("Act"), "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee." N.C. GEN. STAT. § 95–25.7 (2011). The Act requires an "employer to notify the employee in advance of the wages and benefits which he will earn and the conditions which must be met to earn them, and to pay those wages and benefits due when the employee has actually performed the work required to earn them." *Narron v. Hardee's Food Sys.*, 75 N.C. App. 579, 583, 331 S.E.2d 205, 208 (1985).

{46} Plaintiff has alleged that Defendant FIC suspended him with pay on September 23, 2010. (Am. Compl. ¶ 169.) Plaintiff also alleges that Defendant FIC failed to pay him the agreed-upon wages from September 23, 2010, until November 30, 2010, and from the date of his termination through the end of his contract. (Am. Compl. ¶ 175.) The Act allows for employees to collect wages that were due to them prior to their termination, but does not allow for the collection of wages that had not been earned. Accordingly, Plaintiff's claim for wages after his termination are not allowed under the Act and, as a result, Plaintiff has failed to state a claim for which relief can be granted as to those wages. The Court therefore **GRANTS** Defendants' Motion to Dismiss to the extent that Plaintiff's claim is for wages allegedly owed after his termination; and **DENIES** Defendants' Motion as to Plaintiff's claim for wages that were owed to him prior to his termination.

G.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{47} The essential elements of IIED are "'(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress[.]'" *Burgess v. Busby*, 142 N.C. App. 393, 399, 544 S.E.2d 4, 7 (2001) (alteration in original) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). On a motion to dismiss a claim for IIED "[t]he determination of whether the alleged conduct is considered extreme and outrageous is a question of law for the trial judge, however, the jury must determine whether the conduct is 'sufficiently extreme and outrageous to result in liability.'" *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354–55, 595 S.E.2d 778, 783 (2004) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 490–91, 340 S.E.2d 116, 121 (1986)); *Burgess v. Busby*, 142 N.C. App. 393, 399, 544 S.E.2d 4, 7 (2001) (reviewing a trial court's determination of whether the conduct described in plaintiff's complaint was sufficiently extreme and outrageous in a motion to dismiss). When evaluating alleged conduct, the court must find that the conduct "exceeds all bounds of decency tolerated by society . . . ." *West v. King's Dept. Store Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988).

{48} Here, Plaintiff alleges that Defendants abused their positions of authority in hopes of getting Plaintiff to sign away his rights under the Employment Agreement, and attempted to "starve out" Plaintiff so that he would have no other option but to agree to the terms of his termination. (Compl. ¶¶ 180–81.) Despite these factual allegations, Plaintiff has been unable to cite any legal authority to support his contention that an employer's method of termination can rise to the level of extreme and outrageous conduct. While Defendants' actions may have been insulting and caused Plaintiff to suffer indignities, the conduct, as alleged, does not exceed all bounds of decency tolerated by society. *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (2008) ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiff[] must . . . be expected and required to be

hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d)). This Court finds that Defendants' actions as pled do not constitute extreme and outrageous conduct. Accordingly, Plaintiff has failed to state a claim for which relief can be granted and Defendants' Motion to Dismiss Plaintiff's claim for IIED is **GRANTED**.

H.

FRAUD

{49}    The Court dismissed Plaintiff's claim for fraud, *supra*, because Plaintiff lacked standing to bring the claim. Nonetheless, the Court analyzes the fraud claim under Rule 9(b) of the North Carolina Rules of Civil Procedure and concludes that the claim also fails because it was not pled with sufficient particularity.

{50}    "'The elements of fraud are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (quoting *McGahren v. Saenger*, 118 N.C. App. 649, 654, 456 S.E.2d 852, 855 (1995)).

{51}    "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." N.C. R. Civ. P. 9(b); *Terry v. Terry*, 302 N.C. 77, 84, 273 S.E.2d 674, 678 (1981). Under the particularity requirement of Rule 9(b), "[m]ere generalities and conclusory allegations of fraud will not suffice." *Allran v. Branch Bank & Trust Corp.*, 2011 NCBC 21 ¶ 31 (N.C. Super. Ct. July 6, 2011), http://www.ncbusinesscourt.net/opinions/2011_NCBC _21.pdf (quoting *Sharp v. Teague*, 113 N.C. App. 589, 597, 439 S.E.2d 792, 797 (1994)).

{52}    When pleading actual fraud, "the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the

fraudulent acts or representations." *Terry v. Terry*, 302 N.C. at 85, 273 S.E.2d at 678.

{53}   In his Complaint, Plaintiff alleges that:

Defendants falsely represented to Plaintiff that they would perform their obligations under the Employment Agreement, Asset Purchase Agreement and loan documents and that the performance of such obligations was in consideration for Plaintiff's agreeing to enter into an Asset Purchase Agreement and transfer real property to Defendants FIC and FCH.

(Compl. ¶ 194.)  The Complaint also alleges that "Defendants represented to Plaintiff . . . that he would be paid as agreed under his contract, that a new substantially similarly contract would be negotiated and that his family would be taken care of."  (Compl. ¶ 194.)  Lastly, Plaintiff argues that paragraphs 21, 28, 30, 32, 33, 68, 78, 80, 81, 112, 120, and 121 of the Amended Complaint contain specific allegations sufficiently identifying the time, place, and identity requirements under Rule 9(b).

{54}   The Court's inspection of these allegations only reveals generalizations that fail to meet the particularity requirements of Rule 9(b).  The allegations are that Plaintiff "entered into a contract of employment with FIC" that was subsequently ratified by certain Defendants (Compl. ¶ 21); that "[o]n December 29, 2009, Plaintiff and Defendant FIC entered into the Amended and Restated Employment Agreement," which was ratified by certain Defendants (Compl. ¶ 28); that at the time Plaintiff entered into the Employment Agreement he was the sole owner of Rascal Holdings (Compl. ¶ 32); that Plaintiff entered into a [Transfer Agreement] on July 10, 2009, (Compl. ¶ 30); that "Defendants . . . represented to the Bankruptcy Court that the [A]sset [P]urchase [Agreement] was in the best interests of [FMG's] creditors" (Compl. ¶ 112); that the Asset Purchase Agreement and Employment Agreement were reviewed by the United States Bankruptcy Court for the Western District of North Carolina (Compl. ¶ 33); that Defendant Wilson "sought to suspend [Plaintiff] on behalf of FIC, in violation of the agreement" on September 23, 2010 (Compl. ¶ 68); that Plaintiff was to be suspended with pay until

his termination date in December 2010 (Compl. ¶ 68); that Wilson sent a letter to Plaintiff Stec confirming the suspension (Compl. ¶ 78); that Plaintiff was terminated in violation of the Employment Agreement (Compl ¶ 81); that FIC's conduct evidences that the Employment Agreement was only entered into in order to induce Plaintiff to complete the Asset Purchase Agreement (Compl. ¶ 120); and that Defendants violated different provisions of the various agreements entered into by the parties. (Compl. ¶ 121.)

{55} The Court finds the above-referenced allegations to be nothing more than general allegations that Defendants made false representations to Plaintiff in order to induce him to enter into the Employment Agreement and Asset Purchase Agreement, and made such representations again when Plaintiff was suspended. None of the allegations in the Complaint: (a) identify a specific individual who made the alleged representations, (b) reflect when the representations occurred, or (c) specify where the alleged conversations took place. From Plaintiff's allegations, the Court can not determine which Defendant made the alleged false representations, or whether the representations were made in a corporate or individual capacity.

{56} Plaintiff's allegations that the representations in the Employment Agreement induced him to enter into the Employment Agreement and the Asset Purchase Agreement fail to specifically identify who signed the Employment Agreement and only state that it was subsequently ratified at some unknown time. Exhibit A of Plaintiff's Complaint is an unexecuted, unsigned copy of the alleged Amended and Restated Employment Agreement referred to in the Complaint. While Plaintiff identifies Defendants Wilson and FIC in his Response Brief as the "persons" who promised Plaintiff that he would be paid under his then-current contract and that a new contract would be negotiated, the Court takes notice that FIC is a corporation, not a person, and Wilson is no longer a defendant in this action. Regarding the alleged conversation between Defendant Wilson and Plaintiff, while Plaintiff states in his Brief that the place where the alleged promise was made is reflected in a letter sent by Defendant Wilson, there is nothing in the Complaint that supports this contention. Accordingly, Plaintiff has failed to plead

his claim for fraud with particularity and the Court **GRANTS** Defendants' Motion to Dismiss as to this claim.

## I.
### PERSONAL JURISDICTION OF MICHELLE MICHAEL

#### 1.
##### STANDARD OF REVIEW

{57}    In order to exercise jurisdiction over a nonresident defendant, this Court must engage in a two-part analysis to determine whether: (1) "'North Carolina's long-arm statute . . . authorize[s] jurisdiction over the defendant[; and] [i]f so, . . . [(2)] whether the exercise of jurisdiction is consistent with due process.'" *Bell v. Mozley*, 716 S.E.2d 868, 871 (N.C. App. 2011) (quoting *Bauer v. Douglas Aquatics, Inc.*, 698 S.E.2d 757, 760 (N.C. App. 2010)).

{58}    Here, it is unclear whether Defendant M. Michael is challenging the applicability of North Carolina's long-arm statute. In her motion to dismiss Defendant simply argues that "she has absolutely no contacts with North Carolina and has had no personal involvement in any of the business transactions with which the Complaint is concerned." (Defs.' Br. Supp. Mot. Dismiss 19.) Out of an abundance of caution, this Court evaluates her argument as a challenge to personal jurisdiction for failure to meet both the requirements of the North Carolina long-arm statute and the Due Process Clause of the Fourteenth Amendment.

###### a.
####### PROCEDURAL REQUIREMENTS

{59}    When a court is presented with a personal jurisdiction challenge:

> Typically, the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Bauer*, 698 S.E.2d at 761 (quoting *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.,* 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005)). "When the

parties submit 'dueling affidavits' under the third category, the trial court may decide the matter from review of the affidavits, or 'the court may direct that the matter be heard wholly or partly on oral testimony or depositions.'" *Id.* (quoting *Banc of Am. Secs. LLC,* at 694, 611 S.E.2d at 183).

{60}     "[P]laintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant." *Id.* (citing *Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs,* 158 N.C. App. 376, 378, 581 S.E.2d 798, 801, *rev'd on other grounds,* 357 N.C. 651, 588 S.E.2d 465 (2003)). In a motion to dismiss for lack of personal jurisdiction, the facts alleged in the complaint are taken as true unless defendants supplement their motion to dismiss with affidavits. *Eluhu v. Rosenhaus*, 159 N.C. App. 355, 359, 583 S.E.2d 707, 711 (2003) (citation omitted). When affidavits or other evidence are offered "the plaintiff must respond 'by affidavit or otherwise . . . set[] forth specific facts showing that the court has jurisdiction.'" *Id.* (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218, *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000)). "A 'verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.'" *Id.* (quoting *Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC*, 158 N.C. App. at 383, 581 S.E.2d at 803).

b.

LONG-ARM STATUTE

{61}     North Carolina's long-arm statute provides for jurisdiction:

> In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either: . . .
> a. [s]olicitation or services activities were carried on within this State by or on behalf of the defendant . . . .

N.C. GEN. STAT. § 1–75.4(4)(a) (2011). Grounds for jurisdiction are also present "[i]n any action which . . . [a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services

within this State or to pay for services to be performed in this State by the plaintiff[.]"  N.C. GEN. STAT. § 1–75.4(5)(a).

c.

DUE PROCESS

{62}    Even when a defendant's actions appear to fall within the reach of North Carolina's long-arm statute, a court must still determine whether those contacts meet the requirements imposed by the Due Process Clause of the Fourteenth Amendment.  The United States Supreme Court has recognized two forms of personal jurisdiction: "'specific jurisdiction,' where the controversy arises out of the defendant's contacts with the forum state, and 'general jurisdiction,' where the controversy is unrelated to the defendant's activities within the forum, but there are 'sufficient contacts' between the forum and the defendant."  *Bauer*, 698 S.E.2d at 763 (quoting *Replacements, Ltd. v. Midwesterling,* 133 N.C. App. 139, 143, 515 S.E.2d 46, 49–50 (1999)).

{63}    Our courts have held that:

> Specific jurisdiction exists if the defendant has purposely directed its activities toward the resident of the forum and the cause of action relates to such activities. This inquiry focuses on whether the defendant 'purposefully availed itself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws,' and jurisdiction may be proper even if the defendant has never set foot in the forum state. General jurisdiction exists where the defendant has continuous and systematic contacts with the forum state, even though those contacts do not relate to the cause of action.

*Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 165, 565 S.E.2d 705, 710 (2002) (quoting *Frisella v. Transoceanic Cable Ship Co.*, 181 F. Supp. 2d 644, 647 (E.D.La. 2002)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011) (stating that when a court attempts to exercise specific jurisdiction "this Court has inquired whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State . . . .'" (quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)) (alteration in original)).

{64} To satisfy the requirements of the Due Process Clause, there must be sufficient minimum contacts between the nonresident defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Bauer*, 698 S.E.2d at 762 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95, 102 (1945)). "'The relationship between the defendant and the forum state must be such that the defendant should 'reasonably anticipate being haled into' a North Carolina court." *Bell*, 716 S.E.2d at 872 (quoting *Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 166 N.C. App. 34, 39, 600 S.E.2d 881, 885–86 (2004)). "The facts of each case determine whether the defendant's activities in the forum state satisfy due process." *Id.* (citation omitted).

{65} In determining whether sufficient minimum contacts exist between the nonresident defendant and the state attempting to exercise jurisdiction, a court must consider:

> (1) the quantity of the contacts between defendant and North Carolina; (2) the nature and quality of such contacts; (3) the source and connection of plaintiff's cause of action to those contacts; (4) the interest of North Carolina in having plaintiff's case tried here; and (5) the convenience to the parties.

*Bell*, 716 S.E.2d at 872 (citing *First Union Nat'l Bank of Del. v. Bankers Wholesale Mortgage, LLC*, 153 N.C. App. 248, 253, 570 S.E.2d 217, 221 (2002)). "'No single factor controls, but they all must be weighed in light of fundamental fairness and the circumstances of the case.'" *Id.* (quoting *B.F. Goodrich Co. v. Tire King*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986)).

{66} Where a defendant is an officer or significant shareholder of a corporation, "'then h[er] corporate acts may be attributed to h[er] for the purpose of determining whether the courts of this State may assert personal jurisdiction over h[er].'" *Saft Am., Inc. v. Plainview Batteries, Inc.*, 189 N.C. App. 579, 598, 659 S.E.2d 39, 51 (2008) (Arrowwood, J., dissenting) *reversed for reasons stated in dissent*, 363 N.C. 5, 673 S.E.2d 864 (2009). However, "personal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon

the corporate contacts with the forum." *Robbins v. Ingham*, 179 N.C. App. 764, 771, 635 S.E.2d 610, 615 (2006) (citing *Godwin v. Walls*, 118 N.C. App. 341, 348, 455 S.E.2d 473, 479 (1995) ("[P]laintiffs may not assert jurisdiction over a corporate agent without some affirmative act committed in his individual official capacity.")); *accord Calder v. Jones*, 465 U.S. 783, 790, 79 L. Ed. 2d 804, 813 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction.").

## 2.

## ANALYSIS

{67}   Defendant M. Michael supported her motion to dismiss for lack of personal jurisdiction with an affidavit regarding her contacts with North Carolina. Under the holding in *Eluhu*, Plaintiff was required to respond by affidavit and provide sufficient facts for this Court to find that it has jurisdiction. *Eluhu*, at 359, 583 S.E.2d at 711.  Plaintiff's Verified Amended Complaint can only serve as an affidavit if it was based on personal knowledge, set forth facts that would be admissible into evidence, and demonstrates that the affiant is competent to testify. *Id.*

### a.

### PROCEDURAL REQUIREMENTS

{68}   Plaintiff directs the Court to paragraphs 21, 35, 37, 49, 63, 66–67, 72, 82–83, 88, 90, 107, 110, 112, 114, and 121 of his Verified Amended Complaint as evidence of Defendant M. Michael's contacts with North Carolina and compliance with the *Eluhu* requirements.  After reviewing Plaintiff's Verified Amended Complaint, the Court finds that none of the paragraphs cited by Plaintiff indicate that any of the allegations contained therein were based on Plaintiff's personal conduct.  In fact, most of the cited allegations make generalized legal conclusions about Defendant Allstate's knowledge or intent, and others are only based on "information and belief."  (Am. Compl. ¶¶ 35, 66–67, 72, 88, 107, 110.)  In addition, those allegations that discuss Defendant Allstate's knowledge or intent are likely to

be inadmissible for lack of personal knowledge under Rule 602, or determined to be hearsay under Rule 802. *See* N.C. R. Evid. 602, 802. Accordingly, Plaintiff's Complaint fails to meet prongs one and two of the *Eluhu* test, and thus, cannot be used as an affidavit to show that Defendant M. Michael has sufficient contacts with North Carolina.

b.

LONG-ARM STATUTE

{69}    While it is unclear which section of North Carolina's long-arm statute Plaintiff would argue provides this Court with jurisdiction over Defendant M. Michael, the facts of the case suggest that it would be either under Section 1–75.4(4)(a) and/or Section 1–75.4(5)(a). In his Response to Defendants' Motion to Dismiss, Plaintiff argues that Defendant Allstate's contacts with North Carolina can be imputed to Defendant M. Michael under theories of piercing the corporate veil and alter ego. (Pl.'s Resp. Defs.' Mot. Dismiss 21.) However, this Court's review of Plaintiff's Complaint finds no allegations of either legal theory. Under an alter ego theory Plaintiff would have needed to allege that Allstate was a mere instrumentality of its stockholders. In North Carolina this requires Plaintiff to show:

> (1) stockholders' control of the corporation amounting to "complete domination" with respect to the transaction at issue; (2) stockholders' use of this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights; and (3) this wrong or breach of duty must be the proximate cause of the injury to the other party.

*State ex. rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 441, 666 S.E.2d 107, 114 (2008). Plaintiff's failure to properly allege an alter ego theory in his Complaint deprives Plaintiff of the argument that this Court has personal jurisdiction over Defendant M. Michael under such a theory.

{70}    Turning to Plaintiff's allegations about M. Michael's contacts with North Carolina, the Court finds that nothing within Plaintiff's Complaint provides any information about Defendant M. Michael's personal contacts with North Carolina. Instead Plaintiff's allegations focus on Defendant Allstate's contacts with

the state.  (Am. Compl. ¶¶ 21, 35, 37, 49, 63, 66–67, 72, 82–83, 88, 90, 107, 110, 112, 114, 121.)  Left with a Complaint that fails to meet the requirements to serve as an affidavit, or to detail Defendant M. Michael's contacts with North Carolina, the Court turns to Defendant M. Michael's affidavit in support of her motion to dismiss.

{71}    In her affidavit, Defendant M. Michael states that she has been a resident of Snohomish County, Washington since 1995; does not own any real or personal property in North Carolina; does not maintain any bank accounts in North Carolina; has never visited North Carolina; has not been a party to any litigation in North Carolina; did not play a role in any of the transactions described in the Complaint; did not play a role in any of Defendant Allstate's transactions or business activities within the state; and has had no communication with anyone inside the state, with the exception of her husband when he was present in North Carolina.  (Aff. Michelle Michael Supp. Mot. Dismiss ¶¶ 2–9.)

{72}    Section 1–75.4(4)(a) and Section 1–75.4(5)(a) of the North Carolina long-arm statute require that some action or solicitation be done by or on behalf of the defendant over whom the court seeks to exercise jurisdiction.  N.C. GEN. STAT § 1–75.4(4–5).  After reviewing the Complaint and Defendant M. Michael's affidavit, the Court finds that the Defendant M. Michael's contacts with North Carolina are virtually nonexistent.  Despite Plaintiff's claims to the contrary, he has failed to provide an affidavit or any other evidence demonstrating that M. Michael has any contacts with North Carolina.  Accordingly, the Court can not find that Defendant M. Michael has had any contacts with our state which would make her subject to personal jurisdiction under North Carolina's long-arm statute.

c.

DUE PROCESS

{73}    Even though the Court has determined that Defendant M. Michael's actions do not satisfy the requirements of North Carolina's long-arm statute, it is clear from our case law that "our long-arm statute was intended to make available to North Carolina courts the full jurisdictional powers permissible under due process."  *Robbins*, 179 N.C. App. at 770, 635 S.E.2d at 615 (citing *Dillon v. Funding*

*Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)) (conducting a due process analysis even after finding that defendant's conduct did not satisfy the requirements of North Carolina's long-arm statute). The Court now looks to determine if any of Defendant M. Michael's contacts meet the requirements of Due Process.

{74}    The Due Process Clause requires that there be sufficient minimum contacts between the nonresident defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Bauer*, 698 S.E.2d at 762. In evaluating the contacts in a case, the court must look at the quantity of contacts, the quality of those contacts, the connection between the action at bar and the contacts, the states interest in having plaintiff's case tried here, and convenience to the parties as a whole. *Bell*, 716 S.E.2d at 872.

{75}    With the exception of some phone calls that may have been made between Defendant M. Michael and her husband when he was in North Carolina, Defendant M. Michael's affidavit shows that she has had no contact with the state. Even assuming that the phone calls occurred, the quality of those contacts were poor, the contacts were unrelated to the facts of this case, and because Defendant M. Michael lives in Washington, the Court determines that it would be highly inconvenient for her to participate in litigation here in North Carolina. While North Carolina does have a strong interest in having its citizens' claims heard in North Carolina, other factors weigh heavily against finding that Defendant M. Michael's contacts are sufficient to meet the requirements of due process in this case. Therefore, this Court concludes as a matter of law that Defendant M. Michael did not direct sufficient activities towards North Carolina to confer personal jurisdiction over her upon the Court. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss all claims against Defendant M. Michael for lack of personal jurisdiction.

V.

CONCLUSION

{76}   For the above stated reasons, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Defendants' Motion to Dismiss Plaintiffs' claims for: unfair and deceptive trade practices; usurpation of corporate opportunities, violation of the North Carolina Wage and Hour Act as to wages owed after Plaintiff's termination; intentional infliction of emotional distress; and fraud is **GRANTED** and all of these claims are hereby **DISMISSED**, with prejudice. Plaintiff's claims for tortuous interference with contract and intentional interference with business relations against Defendants Sampson and Sampson Trust are hereby **DISMISSED**, but without prejudice to Plaintiff to seek appropriate amendment of his Complaint.

{77}   Defendants' Motion to Dismiss for lack of personal jurisdiction is **GRANTED** and, therefore, Plaintiff's claims against Defendant M. Michael are **DISMISSED**, with prejudice.

{78}   Defendants' Motion to Dismiss Plaintiff's claims for: breach of contract and breach of implied covenant of good faith and fair dealing; tortuous interference with contract and intentional interference with business relations against Defendants Allstate, Policeno, and J. Michael; and violation of the North Carolina Wage & Hour Act as to wages owed before Plaintiff's termination, is **DENIED**.

**SO ORDERED**, this the 30th day of April, 2012.